FRUGE, Justice ad hoc.
 

 Warren Cox was indicted for the murder ■of George Locke, and found guilty without capital punishment. He was sentenced to confinement at hard labour for the rest of his life.
 

 During the course of his trial, eighteen bills of exception were reserved, which will be considered in numerical sequence.
 

 Bills 1, 2 and 3 were taken to the procedure of the Grand Jury. Testimony was taken, and these exceptions were tried .and disposed of prior to the trial on a motion to quash. Bill No. 1 was taken to the facts (1) that the drawing of the names from the venire list was begun before George W. Rhea, whose name was on the list, had actually arrived in the courtroom; further (2) that there was no such person as P. S. McGee, and the summons to serve on the Grand Jury was served on F. S. McGee. The trial judge in his per curiam pointed out that since the name of Rhea had not been drawn from the envelope anyway, defendant’s rights had not been prejudiced, and that since the error in McGee’s name was detected at the time the sheriff made his report, he, the judge, excused him on his request. We find that the judge exercised reasonable discretion and properly denied the motion to quash. State v. Ardoin, 136 La. 1085, 68 So. 133; State v. Blue, 134 La. 561, 64 So. 411; State v. McCollum, 135 La. 432, 65 So. 600.
 

 Bill No. 2 was levelled at (1) the refusal of the District Attorney to summons the defendant’s son as a witness before the Grand Jury, and (2) the District Attorney himself testifying as a witness before the Grand Jury. The Grand Jury is not bound to hear evidence for the defendant. Art. 214, Code of Criminal Procedure. The District Attorney has the right at all times to appear before the Grand Jury “for the purpose of giving any information relative to any matter cognizable by them”. Art. 19, Code of Criminal Procedure. There is no merit to Bills Nos. 1 and 2.
 

 Bill No. 3 was reserved to the overruling of the motion to quash, the salient grounds of which have already been dis
 
 *284
 
 posed of in'Bills of Exception Nos. 1 and 2 (the third ground of the motion to quash, relating to an alleged defect in the form of the indictment, has not been urged here, and, at any rate, has no merit). Bill No. 3, therefore, presents no question for our consideration.
 

 Bill No. 4 was reserved because of the introduction into evidence of four photographs of the scene of the crime, with people standing at certain locations, pointed out by the defendant himself later in the same day of the shooting as representing certain incidents and locations. Since no reenactment of the crime was attempted by the photographs, and since the defendant himself pointed out the locations, we fail to see how they prejudiced him. There is no merit to Bill No. 4. See State v. Hutton, 198 La. 174, 3 So.2d 549.
 

 Bill No. 5 related to two questions asked defendant’s son (who was with him when the crime was committed), and to which the district attorney objected, the trial judge having sustained the objection. The trial judge held that neither the purpose of the trip in the course of which the crime was committed, nor the place where defendant and his son first stopped was relevant to the case. The son, Wiley Cox, was the first witness to testify for the defense, and the objectionable questions were on direct examination. At that time there had been no testimony offered by the State to show that the defendant went out on the road that day looking for the deceased, but, to the contrary, the only evidence offered by the State as to
 
 why
 
 he was at the scene of the accident was defendant’s own oral confession which had been introduced by the State and, necessarily, had to be introduced as a whole, and that included the -fact that the defendant had been hunting for hogs prior to the homicide, which was the reason he was armed with a loaded automatic shotgun. Later in the trial, the defendant himself testified as a witness on his own behalf, wherein he related in full and at length his actions on the day of the homicide. The transcript of the testimony of Wiley Cox, on direct examination, in the record, reveals that he was allowed great latitude in his testimony and that he was permitted to testify what time he and his father left home, and where they went that day prior to the homicide. We fail to see in what way the defendant was prejudiced, under the circumstances.
 

 Bills Nos. 6 and 7 were reserved to the ruling of the trial judge when he sustained the State’s objection to admitting certain testimony as hearsay, while the defendant’s son was
 
 on
 
 the witness stand. The defendant himself later testified fully on this point, and we fail to see where the defendant was prejudiced, and therefore find no merit in these bills.
 

 Bill No. 8 was reserved to the ruling of the trial judge when he sustained the State’s objection, when defense counsel asked the defendant “When you
 
 shot (i.
 
 e. earlier in the day while hunting) did you
 
 *286
 
 replace the shells ?” There is n<q merit to this hill for the reason that the defendant testified that the gun was loaded when he first saw Locke.
 

 Bills of Exception Nos. 9 through 14 are interrelated, going to the refusal of the trial jud&c to permit certain testimony to he given as to prior threats on the life of the defendant made by the decedent, following the objection of the State that no overt act had been proven to justify the defendant in thinking that his life was in peril. In considering the question whether or not sufficient foundation has been laid 'for the introduction of evidence of the dangerous character of the deceased, or of his previous threats against the accused, the trial judge has the discretion of passing upon the credibility of the witnesses and the sufficiency of the evidence. And, after hearing the evidence offered in support of the accused’s contention that the deceased was guilty of hostile demonstrations or an overt act, if he decides that no overt act or hostile demonstrations were committed, his ruling on that question is subject to review. State v. Dreher, 166 La. 924, 118 So. 85; State v. Harvey, 159 La. 674, 106 So. 28; State v. Poole, 156 La. 434, 100 So. 613; State v. Brown, 172 La. 121, 133 So. 383; State v. Clark, 142 La. 282, 76 So. 714. However, his ruling will not be reversed unless manifestly erroneous; and after studying the record in this case, we find no error in the trial judge’s ruling that an overt act of. aggression on the part of the deceased had not been -proved.-
 

 We incorporate in this opinion the trial judge’s per curiam to Bill of Exception No. 9, as follows:
 

 “The evidence offered of an overt act by deceased is wholly unconvincing when taken in connection with all of the evidence, which shows conclusively that the deceased was trying to get away when he was shot. Warren Cox, himself, says at Page 161 of the Transcript of Evidence that Locke was out on the side road going toward his shack, which was away from where Cox was at the time. Of course, Cox and his son say Locke was fumbling with his midsection, as if to draw a weapon, but he was trying to get away.
 

 “This class of testimony is only admissible for the purpose of showing aggression on the part of the deceased, and, in this case, no sufficient overt act was shown to admit it.
 

 “All the evidence with the exception of the claim that Locke was fumbling as if to' draw a weapon, refutes the idea that he was an aggressor. Not a word was said by anyone at the time Locke was shot, and he had no weapon on him.
 

 “It would have been very foolish on his part to pretend he was trying to draw a weapon, when he had none, when he was confronted by a man with an automatic shotgun.”
 

 Bill of Exception No. 10 was taken to the district judge’s refusal (on the State’s
 
 *288
 
 objection) to permit Cox to answer the question: “Last summer in July or August did you have a prior difficulty with George Locke?” The per curiam of the trial judge is as follows:
 

 “In addition to what was said in Bill No.
 
 9,
 
 it may be added that the prior trouble between Cox and Locke got before the jury by way of Cox’s admissions to the coroner and district attorney, and this prior trouble was argued to the jury by defense counsel, so that he had the benefit of having it before the jury.”
 

 We fail to see where the defendant was prejudiced.
 

 When defendant’s son, Vernon Cox, was testifying, he was asked by defense counsel whether he knew of previous difficulty between his father and deceased, to which question the State objected; and on the objection being sustained, defense reserved Bill No. 11. Defendant’s wife was questioned concerning the same altercation between deceased and defendant, and the State again objected. After reviewing the transcript of her testimony, which was given after the jury had been retired, and which concerned the existence and cause of a bruise on the defendant received in the 'course of that altercation, we do not find that' the defendant was prejudiced by the ' jury’s not receiving the wife’s testimony on this point. The .trial judge gave to Bills Nos. 11 and 12 the same reasons as he did for Bills Nos. 9 and 10, both of which are incorporated hereinabove. We fail to see where the defendant was prejudiced.
 

 Bills of Exception Nos. 13 and 14 were taken to the trial judge’s refusal to allow two witnesses to testify as to threats made by the accused to them, out of the presence of the defendant, several months before the homicide, which they, the witnesses, never communicated to-defendant. The trial judge held, and rightly so, that:
 

 “An uncommunicated threat, when no communicated threat has been proven, is so clearly inadmissible that no citation of authority is necessary.
 

 “If any communicated threats had been offered, then this evidence might be admitted in corroboration, otherwise it is not admissible.”
 

 We therefore find no merit in Bills 9 to-14, inclusive, for the reasons outlined hereinabove.
 

 ' Bill of Exception No. IS was taken to two separate statements contained ini the final argument of the District Attorney to the jury, the first of which was as follows :—
 

 “I am speaking for the people, for the- ' State of Louisiana. Let’s go in the jury box and let’s be real men; let’s do our duty, and let’s return a verdict of murder where it should be, and condemn this man to capital punishment, and see if it doesn’t do this Parish some good.”
 

 Defense counsel’s objection and motion for a mistrial were overruled, and dis
 
 *290
 
 posed of by the trial judge in his per curiam as follows:—
 

 “ * * * the record does not show that the jury was specially charged after that statement, but it had been repeatedly charged to base its verdict on the law and the evidence, and this statement, I take it, was in reply to what counsel for the defendant said in his argument to the jury * * * ‘I ask you to take into consideration, if you gentlemen should render a verdict that would hold this man guilty, that you would strike a blow at the right of self defense that wouldn’t be forgotten in Webster Parish for fifty years. These children out here in the Courtroom, if they should hear that the jury in this Court has ruled that a man can’t protect his life under the circumstances brought up in this case, you will deliver a blow to justice in the lives of these boys and girls that they will never overcome, if it should be told these young children “ ‘you don’t have a right to defend yourself, you are supposed to run you are supposed to hide’ ” Now that is the effect of the verdict of guilty in this case, on the other hand, if you say the defendant is not guilty, you will let these children know they have a right to stand up for their rights, to not let people run over them’ and other words of a similar character, including the statement, ‘ “you will let the people know that in Webster- Parish a man has a right to defend his life, instead of being a cringing, yellow coward and run.” ’
 

 “In my opinion, the District Attorney had the right to reply ter the argument of defense counsel and that the rights of the accused were protected by the repeated warnings to the jury to base its verdict on the law and the evidence.”
 

 The substance of the other statement which defense counsel found objectionable was that deceased because of “the deep-damnation of his taking off” had no chance to “get right with his Maker”, that defendant at least had such opportunity even were he to be electrocuted “if you return a verdict of Guilty as charged”, that the Saviour wanted all to “get right”, and that he, the District Attorney, did not like for people “to take the Bible, and take my religion, and say that excuses murder.” The trial judge overruled the objection because he considered the argument in the nature of a reply to what defense counsel had been saying, the drawing of a parallel between the instant case and the trial of Our Lord Jesus Christ. Since the Court specially charged the jury: “ * * * But, I will say to the Jury again, -base your verdict on the evidence, and on the law as you will hear it in the charge of the Court. Base your -verdict on that. * * * ” and further, since a capital verdict was not returned, for which the State had been arguing, if there was any prejudice at all, it was in the defendant’s favour. It is well to note that counsel for defendant had argued at length to the jury'and quoted from ■ the Bible to justify his interpretation of the evidence for an acquittal. We have
 
 *292
 
 carefully studied the record, which contains the argument of both the district attorney and defense counsel, and we conclude that the Trial Judge was correct in his ruling. Even if the argument by the State may have been improper, it was a legitimate response to the argument of counsel for defendant. State v. Taylor, 167 La. 1113, 120 So. 875.
 

 Bill No. 16 was reserved because of the trial judge’s refusal to give certain special charges requested by the defendant, and w.e find no error in his per curiam that his general charge covered all the law applicable to the case.-
 

 Bill of Exception No. 17 was taken to the overruling of a motion'in arrest of judgment, Bill of Exception No. 18 to the overruling of a motion for a new trial. All of the matters of which they complained were covered by the other bills already reserved.
 

 For the reasons above set forth, the judgment and conviction appealed herein are hereby affirmed.