**55 So.2d 881**

**STATE v. SEARS.**
**No. 40317.**

Nov. 5, 1951.

Rehearing Denied Dec. 10, 1951.

G. Wray Gill, New Orleans, for defendant-appellant.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severn T. Darden, Dist. Atty., Peter J. Compagno, Asst. Dist. Atty., George J. Gulotta, Executive Asst. Dist. Atty., New Orleans, Racivitch, Johnson & Wegmann, New Orleans, of counsel, for the State.

McCALEB, Justice.

Appellant has been twice convicted and sentenced to death for the murder of his mother-in-law, Edna Francois. The first conviction was annulled on appeal to this Court and the case remanded for a new trial. State v. Sears, 217 La. 47, 46 So.2d 34. Having again been found guilty, he has prosecuted this appeal relying on 33 bills of exceptions reserved at the trial for a reversal of his conviction.

An examination of the bills discloses that many of them refer to the same alleged error of law and, therefore, need not be treated separately. Indeed, counsel for appellant has cumulated a number of the bills in his discussion of the case basing his argument on ten separate points. It therefore suffices to combine for consideration all bills covering the same or similar legal proposition endeavoring, as nearly as possible, to follow the grouping adopted by counsel. Initially, however, a brief statement of the facts is in order.

On the afternoon of March 17, 1948, Edna Francois went to premises in the City of New Orleans in which appellant occupied an apartment and asked him if her

daughter, Catherine Sears (his estranged wife), could come to the apartment to get some clothes which she had left there. Upon obtaining his permission, Edna went to another apartment in the building and called her daughter over the telephone. Approximately 20 minutes later, Catherine arrived and, after holding a brief conversation with her mother, went to appellant's apartment to obtain her belongings. Within a short interval of time, a pistol shot was fired in the apartment and Edna ran through the hall in the direction from where it was heard. As she was in the hallway, appellant appeared at the door of his bedroom and fired, striking her and causing her to fall to her knees. While she was thus positioned, he fired several other shots which entered her body from the back. In short order, police arrived at the scene, covered the exits of the building and caused appellant to surrender. An investigation was immediately conducted which disclosed the body of Catherine outstretched in the bedroom and that of Edna in the hall. Appellant was then taken to Detective Headquarters where he was questioned by an Assistant District Attorney and made a written confession of the killings.

Bills Nos. 1, 29, 31 and 17 are founded upon the alleged failure of the trial judge to explain in his charge to the jury, or to permit defense counsel to explain while questioning the jurors on their voir dire examination, the difference between murder and manslaughter and to point out that the essential distinction is the element of malice, which counsel contends is present in murder but absent in manslaughter.

The judge stated, in substance, in his charge to the jury that murder is defined by the Louisiana Criminal Code as the killing of a human being when the offender "has a specific intent to kill or to inflict great bodily harm", Article 30; LSA–R.S. 14:30, whereas, manslaughter is the killing of a human being which would be but is not murder because "the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection". Article 31, Criminal Code; LSA–R.S. 14:31. And he refused appellant's request to instruct the jury that the absence of malice is the essential difference between murder and manslaughter, being of the opinion that, since the adoption of the Criminal Code, malice aforethought is no longer an element of murder.

The view of the trial judge is correct. Prior to the adoption of the Criminal Code, murder had not been defined by the Legislature. Under the jurisprudence, it was the same under our law as at common law. State v. Mullen, 14 La.Ann. 570 and State v. Robinson, 143 La. 543, 78 So. 933. Murder at common law is defined as "the unlawful killing of a human being with malice aforethought, express or implied". Clark and Marshall "Crimes" 4th Ed. Sec. 236, page 287. However, the redactors of

our Criminal Code, in defining murder, intentionally omitted "malice aforethought" as an element, substituting in its place "specific intent" for the reason stated in the comment contained in the footnote of Article 30 of the Criminal Code that: "Rather than use this value and purely fictional phrase, (malice aforethought) relying upon past decisions for its interpretation, the Reporter has enumerated the situations where the homicide is to be considered as murder. These coincide very closely with the prior jurisprudence where the courts have been attempting to delimit and define the term 'malice aforethought.'" (Words in parenthesis ours).

The difference between murder and manslaughter appears clearly in the definitions set forth in Articles 30 and 31 of the Criminal Code and no further explanation is necessary to any one of ordinary intelligence. Article 31 simply states that manslaughter is a homicide which would be murder but for the factor that it is committed in sudden passion caused by reasonable provocation. The intent in manslaughter, like that in murder, is specific but the penalty for the crime is not as severe because of the mental and physical excitement of the actor, produced by adequate cause.

The contention of defense counsel that the absence of malice aforethought is the element distinguishing manslaughter from murder is based on common law conceptions. Voluntary manslaughter is defined at common law as an intentional homicide in sudden passion caused by reasonable provocation "and not with malice aforethought". Clark and Marshall "Crimes" 4th Ed. Sec. 253, page 309; Wharton's Criminal Law 12th Ed. Vol. I, Sec. 425. But, since malice aforethought has been omitted as an element of murder under our statutory definition, it follows that its absence in manslaughter can no longer be regarded as the distinguishing feature of the crimes.

The statements relied on by counsel, which are found in the cases of State v. Harper, 205 La. 228, 17 So.2d 260 and State v. Adams, 210 La. 782, 28 So.2d 269, are merely quotations of the common law distinction between murder and voluntary manslaughter and are not authority for the contention that malice is the essential difference between the crimes as defined by the Louisiana Criminal Code.

Bills Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10 and 12, pertain to the claim that the judge erred in permitting the State, over timely objection, to adduce evidence concerning the killing of Catherine Sears which included an alleged gruesome photograph of her body taken at the scene of the crime. The judge states in his per curiam that he allowed the evidence because he considered it part of the res gestae.

█ The ruling is correct. The killing of appellant's wife and mother-in-law arose out of one affray and was a continuous transaction. The crimes being inseparable,

evidence of the homicide of the wife constituted res gestae within the meaning of Article 447 of the Code of Criminal Procedure; LSA–RS 15:447, and therefore was admissible as a necessary incident or immediate concomitant of the offense for which appellant was on trial. Article 448, Code of Criminal Procedure, LSA–RS 15:-448; State v. Mulholland, 16 La.Ann. 376; State v. Corcoran, 38 La.Ann. 949; State v. Anderson, 45 La.Ann. 651, 12 So. 737; State v. Donelon, 45 La.Ann. 744, 12 So. 922; State v. Desroches, 48 La.Ann. 428, 19 So. 250; State v. Blount, 124 La. 202, 50 So. 12; State v. Schmidt, 163 La. 512, 112 So. 400; State v. Leslie, 167 La. 967, 120 So. 614; State v. Comeaux, 171 La. 327, 131 So. 36 and State v. Sears, supra.

Defense counsel acknowledges the right of the State to prove the death of Catherine Sears but asserts that the evidence should have been limited to this fact alone and that, to allow the admission of detailed circumstances respecting her death, was highly prejudicial to appellant. We agree with counsel that the evidence was prejudicial; patently, all evidence of a heinous crime is not of benefit to the accused but that is not the issue before us. The question is whether the evidence was admissible, which we have affirmatively answered.

Nor do we find merit in counsel's point that the judge should not have received in evidence a photograph of the body of Catherine Sears taken at the scene and pictures of the bedroom in which the body was found. The basis of the complaint is that the pictures were gruesome and served only to prejudice the jury against appellant as they were unnecessary to the State's case. The short answer to this proposition is that there is nothing gruesome or revolting about the pictures. Hence, the ruling in State v. Morgan, 211 La. 572, 30 So.2d 434, on which counsel relies, is inapposite.

Bills Nos. 11, 18, 28 and 30 relate to the effect to be given to self-serving declarations or exculpatory statements contained in appellant's confession. It is maintained by counsel that the jury should have been instructed that, since the state had offered the confession in evidence, it was bound in law by all of its contents excepting those statements which it had disproved by other evidence.

Counsel is mistaken in his appreciation of the law. After a confession is received in evidence, it is a matter for the jury to determine the weight to be given it and this applies to all statements contained therein. In other words, it is a matter for the jury to consider exculpating statements and accept or reject them in the same manner as all other evidence in the case. There is nothing said in the opinion in State v. Capaci, 179 La. 462, 154 So. 419, cited by counsel, which supports the view that the State is bound by self-serving declarations contained in a confession. On the contrary, the decision is squarely against the point advanced by counsel. It

is well settled that the State has the right to contradict exculpatory statements (State v. Aspara, 113 La. 940, 37 So. 883; State v. Poree, 136 La. 939, 68 So. 83; State v. Hayes, 162 La. 310, 110 So. 486 and State v. Mattio, 212 La. 284, 31 So.2d 801) and its failure to do so does not create an adverse legal inference or place it in the position of vouching for their truth.

Bill of Exceptions No. 13 was purportedly reserved to the action of the court in permitting the district attorney to elicit opinion evidence from a defense witness who was placed on the stand to contradict the testimony of Frances Prosper, the main witness for the State. However, an examination of the bill discloses that the judge sustained counsel's objection. The truth of the matter is that counsel is now assailing a question propounded to the defense witness by the trial judge in which the judge referred to a written statement made by Frances Prosper to the District Attorney.

 complaint cannot be considered for the reason that counsel did not object to the question propounded by the judge, in order that he might rule thereon. Hence, it is not properly part of the bill of exceptions which, under Article 498 of the Code of Criminal Procedure, LSA–RS 15: 498, "is grounded on the objection made to the ruling of the court on some purely incidental question arising during the progress of the cause * * *".

██ Bill of Exceptions No. 14 has not been pressed here and appears to be without merit. While one of the defense witnesses was on cross-examination, he was asked by the District Attorney to tell the jury what appellant said to him after the killings. An objection was made to this question on the ground that the evidence would be repetitious. The trial judge states in his per curiam that he overruled the objection because the witness was under cross-examination and, furthermore, that no injury resulted as the answers of the witness were favorable to appellant.

██ Bill No. 15 was reserved to the refusal of the court to permit certain defense witnesses to testify that the deceased had previously threatened to kill appellant. The judge sustained the State's objection to this evidence on the ground that the testimony submitted by appellant, outside of the presence of the jury, failed to exhibit to his satisfaction that the deceased made a hostile demonstration or overt act at the time of the killing, as required by Article 482 of the Code of Criminal Procedure LS A–RS 15:482 and the well-established jurisprudence.

██ The judge did not err in his ruling. The only evidence offered to support the claim of an overt act on the part of the deceased at the time of the shooting is the statement of appellant himself which is flatly contradicted by the testimony of Frances Prosper, allegedly a disinterested

eye-witness to the affray. And, while it appears that appellant attempted to show the unreliability of the testimony of Frances Prosper by other witnesses, the trial judge was not impressed, concluding that no overt act had been committed by decedent. It is, of course, true that the ruling of the judge on the question of whether a proper foundation has been laid to permit evidence of hostile demonstration or prior threats is reviewable by this court. State v. Brown, 172 La. 121, 133 So. 383; State v. Maines, 183 La. 499, 164 So. 321 and cases there cited. But it is also established that this court will not reverse the ruling of the judge on this question of fact in the absence of manifest error (State v. Cox, 218 La. 277, 49 So.2d 12) which we do not find to be present in the case at bar.

■ Bill of Exceptions No. 16 was taken to the refusal of the trial judge of a special charge submitted by appellant's counsel, relative to the elements constituting a threat in a manslaughter case, which also included a definition of self defense. The judge refused the charge on the ground that all of the matters therein had been fully covered by the general charge to the jury. A reading of the general charge has been sufficient to confirm the correctness of the ruling.

■ Special charges were requested by counsel for appellant respecting the law pertaining to threats and the hostile character of the deceased. Upon their denial, bills of exceptions Nos. 19, 20 and 27 were

taken. The refusal of the judge was based on the ground that, since evidence of threats by the deceased was inadmissible because of the lack of proof of an overt act, her character was not an issue before the jury. The ruling was right.

■ Bill No. 21 was reserved to the judge's refusal of a charge concerning the crime for which appellant was on trial. The per curiam shows that the denial was based on the ground that the special charge was included in the written general charge to the jury and we find this to be correct.

We also hold that the judge did not err in refusing certain other special charges on the law of self defense, justification, degree of proof and justifiable excuse which are made the subject of Bills of Exceptions Nos. 22, 23, 24 and 26, for the reason that these matters were covered by his written general charge to the jury.

■ Bill of Exceptions No. 25 was reserved to the refusal of the judge to give a special charge on circumstantial evidence. The judge states in his per curiam that he felt that the requested charge was without application to the facts of the case. Appellant's counsel does not claim that the statement in the per curiam is incorrect and, therefore, we assume that this bill has been abandoned.

■ Bill of Exceptions No. 32 was reserved to the overruling of a motion for a new trial. This motion consists, for the most part, of a reiteration of the conten-

tions made under the other bills heretofore discussed. In addition, it is contended that appellant was deprived of due process and a fair and impartial hearing because a severe storm struck the City of New Orleans during the course of the trial causing the members of the jury to be more concerned with their own safety and that of their families than with the evidence in the case. This charge, which is not supported by evidence, seems to be frivolous.

Finally, Bill of Exceptions No. 33, which was taken to the overruling of a motion in arrest of judgment, charges the nullity of the trial because the second day thereof was a legal holiday. It is asserted by counsel that, since the selection of the jury had been completed and evidence heard on August 29th, it was unlawful for the court to adjourn to August 30th and conduct the hearing on that day, which is a legal holiday commemorating the birth of the late Senator Huey P. Long. The contention is grounded on Article 335 of the Code of Criminal Procedure, LSA–RS 15: 335, the pertinent part of which provides: "Whenever the impaneling of a jury on the trial of any case shall have been begun, but not concluded, at the time at which there intervene any legal holiday or legal half-holiday, it shall be within the discretion of the presiding judge to order said trial to be proceeded with upon said legal holiday, * * *."

Counsel maintains that the above quoted provision is explicit and limits the discretion of the judge—that is, that the hearing of cases on a legal holiday or half-holiday is restricted to those matters which are continued for the completion of the petit jury panel and that, as a necessary consequence, the judge has no right to conduct hearings on a legal holiday, in a case such as this, where the jury panel had been completed and the taking of evidence begun on the previous day.

There might be considerable force in this proposition [1] if appellant had objected to proceeding with the trial on August 30th. But he did not do so. Indeed, he did not see fit to raise the question until after his conviction by the jury. It is firmly established that proceedings conducted on a statutory legal holiday are not nec-

---

[1]. Section 1 of Act 6 of 1904, Dart's Stat. Sec. 1735, LSA–R.S. 13:4161, which is said by the compiler of Dart's Code of Criminal Procedure to be similar to Article 335, contains an important difference. The 1904 statute, in speaking of the cases which may be continued for hearings on a holiday or half-holiday, declares: "Whenever empanelling of a jury *or the taking of evidence* on the trial of any case, shall have been begun, but not concluded, * * *". In Article 335 of the Code of Criminal Procedure, the words "or the taking of evidence" have been omitted, which would seem to limit the discretion of the judge to conduct hearings on the holiday following the beginning of a trial to such cases where the impanelling of the jury had not been completed.

essarily null; that they may be held on such day by consent; that, if an accused fails to object at the time the proceedings are begun on the holiday, he is considered to have acquiesced by his silence and that the question cannot be raised after conviction on a motion in arrest of judgment. State v. Duncan, 118 La. 702, 43 So. 283, 10 L.R.A.,N.S., 791, 11 Ann.Cas. 557 and State v. Brownfield, 160 La. 171, 106 So. 734, 43 A.L.R. 475, citing with approval State v. Foss, 158 La. 471, 104 So. 211 and refusing to follow State v. Rogers, 150 La. 1080, 91 So. 518.

The conviction and sentence are affirmed.

HAWTHORNE, J., absent.