240 So.2d 736

**STATE of Louisiana**

**v.**

**Eddie FOREMAN, Jr.**

No. 50325.

Nov. 9, 1970.

O. Romaine Russell, Modica, Breese & Russell, Baton Rouge, for plaintiff-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent

Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for defendant-appellee.

SUMMERS, Justice.

The defendant Eddie Forcman, Jr., prosecutes this appeal from his conviction and sentence to death on a charge that he murdered Joseph Guerin. He relies upon five bills of exceptions.

To understand the context in which these bills were reserved, we recite the facts briefly as stated in defendant's brief. The victim in the instant case, Joseph Guerin, was the owner and operator of the Robinhood Bar in Baton Rouge, Louisiana. At approximately 1:30 a. m. on July 9, 1966, defendant was the only customer in the bar. Guerin's wife, Annie, and their employee, Henry Smith, were also present. With the intention of closing, Guerin accompanied the defendant to the front door of the place of business; and just after the defendant stepped out of the door, he turned to Guerin, drawing a pistol from his belt, and pulled the trigger three times, only four of the six chambers of the gun being filled. On the third time the gun fired and struck Guerin between the eyes, killing him immediately. The defendant fled the scene, and was taken to New Orleans the next day by friends. Here he caught a freight train heading west. He remained at large thereafter until his arrest on June 2, 1968, in Stockton, California.

Defendant's position is that immediately prior to the shooting he had come into the bar and turned to leave when he realized they were closing, but Guerin's wife called to him. As he was speaking to her, Guerin came from behind the bar and started shouting at defendant to leave and shoved him. While leaving, and as he moved out of the door, Guerin grabbed the handle of a pistol in his belt. Believing Guerin was going to shoot him, the defendant maintains he shot in self-defense.

Only the following bills of exceptions are urged on appeal.

*Bill No. 7*

■ This bill was reserved when the trial judge overruled defense counsel's motion for a mistrial during the direct examination of Eloise Brown by the prosecuting attorney. She testified that approximately one-half hour before the commission of the crime she had been speaking with the defendant in the bar and he told her he was going to kill "Lou", testifying also that "Lou" was defendant's wife; whereupon defendant moved for a mistrial. In support of the motion, it is contended that this line of questioning was irrelevant and prejudicial. The trial judge denied the motion, but did admonish the jury to disregard what defendant allegedly said other than with regard to the victim.

Relying upon articles 771 [1] and 775 [2] of the Code of Criminal Procedure, counsel for defendant contends that these remarks were so prejudicial that mere admonishment by the court could not erase the prejudicial impact upon the jury, and a mistrial was necessary. He maintains this is especially true in view of the fact that the district attorney encouraged these remarks by inquiring of the witness as to the identity of "Lou" rather than discontinuing this prejudicial testimony.

This bill lacks merit. A perusal of the testimony of Eloise Brown discloses she testified she was drinking at the bar when the defendant approached her for a drink, and she told him she had not bought the liquor they were drinking. The district attorney asked her, "What were you all drinking?" and this colloquy followed:

A. Ambassador scotch, and I told him that Joe Guerin had bought it. So he didn't say any more to me about it. And so he just, you know, stood

there and he told me, said "I'm going to kill Lou."

Q. Who?

A. Lou

Q. Who is Lou?

A. Which he called his wife, Lou. Her name is Louise Brown.

Q. Oh, is that her nickname?

A. I don't know, that's what he called her; I don't know.

Following defense counsel's objection to the questions, the district attorney declared he thought the testimony should be admissible to show defendant's frame of mind, but pointed out, "Her answer wasn't responsive to my question." He then stated to the witness, "My question was, and I will repeat it, what, if anything did he say with reference to Joseph Guerin, you understand?" She then responded that he told her that he was going to kill Joe and didn't tell her why when she asked him.

1. Article 771, C.Cr.P. provides: "In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

\* \* \* \* \*

"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the re-mark or comment is within the scope of Article 770.

"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."

2. Article 775, C.Cr.P. provides: " \* \* \* Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. \* \* \* "

It is obvious that the witness' answer was not responsive to the district attorney's question and it was not the intention of the district attorney to solicit the information. Further questioning shows that the district attorney sought to have the witness merely give testimony relative to remarks the defendant had made in regard to the victim. Since the responses were inadvertently received, and there is no showing that the admonition was "not sufficient to assure the defendant of a fair trial," there is no basis to sustain the motion for a mistrial. This court has held that a trial cannot be defeated by the act of a witness in volunteering an objectionable remark. State v. Rugero, 117 La. 1040, 42 So. 495 (1906). See also, State v. Goodwin, 189 La. 443, 179 So. 591 (1938).

### Bill No. 9

When the trial judge overruled defense counsel's objection to the testimony given by the state's witness, Thomas Wicks, as hearsay, this bill was reserved. The witness stated he was a taxi driver. On the night of the crime he picked up a man who asked to go to "Scotland" and when he asked him what street, he merely told him, "Well, I'll show you." In response to defense counsel's objection that this was hearsay, the district attorney declared that he intended to identify the passenger. When defense counsel objected again after further questioning about the

passenger, the Court declared the State would have to connect the evidence with the facts of the case and allowed the State to proceed.

Defense counsel maintains that the State never did connect this hearsay testimony to this case and the testimony was extremely prejudicial, for it implanted in the jury's mind the notion that defendant was fleeing the scene of the crime immediately after this shooting took place, although the witness could never identify the defendant as the person who made these statements to him.

Although the State's evidence may be weak in showing that the passenger in the taxi was the defendant, unquestionably the intention of the State was to prove that it was the defendant that he picked up just after the offense occurred approximately seven blocks from the bar and drove to Scotlandville. All the witness could say was that the passenger was a colored male of the defendant's size. But on the basis of the State's contention that this was the defendant, the circumstantial evidence was admissible as part of the res gestae. Furthermore, what is the point of this complaint when defendant admitted in his statement to the arresting officer that he left the city because he shot a man. Certainly, if the ruling was erroneous, it was not of sufficient gravity to warrant reversal.

## Bills 11 and 12

Both bills were reserved when the trial judge sustained the district attorney's objection to questions propounded by defense counsel to defense witnesses Melvin Dotson and Freddie Holmes. The questions related to what they had observed about the victim on prior occasions in the bar. The first objection was made when defense counsel asked Melvin Dotson with respect to closing time at the Robinhood Bar, "Now on these occasions did you observe Joseph Guerin?" Objection was again made when defense counsel asked Freddie Holmes, "On the occasions you have been in that bar did you see Joseph Guerin carrying a gun?"—"Did Joseph Guerin ever pull a gun on you?"

After the jury was retired from the courtroom, counsel for defendant explained it was his intention to prove Guerin's vicious nature by these witnesses. Defense counsel argued then, as he does now, that while it has been held that the Court could exclude evidence which would tend to show the dangerous or vicious character of the victim in the absence of credible evidence of a hostile demonstration or overt act by the victim, in the case at bar there had been testimony of some hostile demonstration or overt act by the victim toward the defendant.

As evidence of hostile demonstration by the victim, counsel points to the testimony of the State's witness, Wallace Ayers, the arresting officer from California and testimony of the defense witness, Melvin Dotson. Ayers testified the defendant told him the victim pushed him and shouted in his ear and shoved him and that at all times the victim had a gun in his belt. Melvin Dotson testified upon direct examination that he was parked directly across the street from the bar at the time of the offense and was getting into his car when he heard a man come out of the door and say, "Don't push me anymore," and someone said, "Well, I said get out." He then testified he heard a shot. The defense relies upon this testimony to establish hostile demonstrations and/or overt acts on the part of the victim. He contends the Court should have allowed the testimony as proof of the vicious character of the victim.

In sustaining the assistant district attorney's objection to defense counsel's question to Melvin Dotson, the trial judge pointed out that the evidence before the Court at the time with regard to a hostile demonstration on the part of the deceased was the self-serving statement of the accused himself to the arresting officer. The judge observed that in his statement defendant did not say anything about the victim attempting to use the weapon or drawing the weapon or that he was in fear. In regard to the testimony of Dotson and proof of an overt or hostile act, the judge stated he did not consider Dotson's testi-

mony credible, pointing out he had been convicted five times. He thus concluded, "I have no credible evidence before me of a hostile demonstration on the part of the deceased."

The trial judge also explained, in sustaining the objections upon which Bills 11 and 12 are based, that evidence of a hostile demonstration on the part of the deceased or his dangerous character must be properly established. This could not be accomplished in the manner defense counsel adopted by attempting to show specific acts. The judge stated, "You cannot show specific acts to show bad character or dangerous character or vicious character, and you cannot show threats unless the threats were made by the victim towards this accused." He noted, "You prove bad character or good character in accordance with the code. You have to put somebody on who is acquainted with the deceased, who lived in the community where the deceased lived, who has heard the character of the deceased * * *"

Under the express provisions of Section 482 of Title 15 of the Revised Statutes, it is provided: "In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the accused is not admissible." The jurisprudence recognizes that while the ruling of the trial judge may be reviewed on the question of whether a proper showing of a hostile demonstration has been made, this Court will not reverse the ruling of the judge on this question of fact unless manifestly erroneous. State v. Terry, 221 La. 1109, 61 So.2d 888 (1952); State v. Sears, 220 La. 103, 55 So.2d 881 (1951); State v. Cox, 218 La. 277, 49 So.2d 12 (1950). It is further provided in Section 479 of the same title that "Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him," and the jurisprudence hereunder establishes that specific acts are not admissible to show vicious disposition. State v. Ricks, 170 La. 507, 128 So. 293 (1930); State v. Sharpe, 170 La. 69, 127 So. 368 (1930); State v. Williams, 155 La. 9, 98 So. 738 (1924).

There is no manifest error in the trial judge's ruling. The only evidence of hostile acts by the deceased were statements by the defendant himself and the testimony of Melvin Dotson. Not only was it shown that Dotson had an extensive criminal record, his testimony was merely what he heard someone saying, "Don't push me any more," and another saying, "Well, I said get out." He could not identify the parties. In opposition to the evidence offered by defendant of this supposed hostile demonstration by the deceased, the positive testimony of two eyewitnesses, Mrs. Guerin and Smith, was received. Each testified that there was no disagreement between the

deceased and the defendant at the time, and both stated the deceased did not have a gun on his person. Thus, the observation of the trial judge is unquestionably correct. We will not disturb his ruling based upon the credibility of witnesses.

### Bill No. 13

■ This final bill was reserved during the closing argument of the district attorney, when he picked up the pistol in evidence, allegedly used by the defendant in committing the crime, and pulled the trigger three times. Contending this conduct was highly prejudicial, counsel for defendant moved for a mistrial. When his objection was overruled, he reserved this bill of exceptions.

He states in his bill and argues in brief that the action of the assistant district attorney was highly prejudicial to the defendant in that it created in the minds of the jurors a belief that defendant was a cold blooded murderer, and, under Articles 771 and 775 of the Code of Criminal Procedure, a court is required to order a mistrial whenever the conduct in the courtroom is so prejudicial to the defendant that he would not be able to receive a fair trial.

A reading of the record clearly shows that the assistant district attorney pulled the trigger of the gun to demonstrate the loud snap the gun made, in corroboration of testimony to that effect. In overruling the motion, the trial judge said, "Counsel for either side has a right to use anything that has been offered in evidence for demonstrative purposes in explaining the case to the jury in argument." Thus, there is no merit to the contention that the assistant district attorney "committed an unnecessary and spectacular type of demonstration." Under Article 771 of the Code of Criminal Procedure the judge's ruling on this question was discretionary. We find no abuse of that discretion.

In oral argument before this Court counsel for defendant objected further to the action of the assistant district attorney stating that it was not proven that this was actually the gun used by the defendant. This objection is not supported by a bill, and it is not properly before the Court.

The conviction and sentence are affirmed.

BARHAM, J., concurs.