249 So.2d 193

**STATE of Louisiana**

**v.**

**Linroy DAVIS.**

**No. 50929.**

June 7, 1971.

Rehearing Denied June 28, 1971.

Robert Glass, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

TATE, Justice.

The chief issue of this appeal concerns whether the defendant was unfairly preju-diced through the suppression of allegedly favorable evidence. We hold he was not.

The defendant was convicted of man-slaughter, La.R.S. 14:31, and sentenced to fifteen years in the State penitentiary. We dismissed an earlier appeal by him, 255 La. 380, 231 So.2d 359 (1970), but indicat-ed that La.C.Crim.P. Art. 362 afforded him a post-conviction remedy for an out-of-time appeal, 231 So.2d 360 (since the defendant had been denied an effective ap-peal through the failure of appointed coun-sel to perfect it). Accordingly, through appropriate proceedings, upon such late ap-peal the defendant perfected six bills of exceptions.

### Context Circumstances

Prior to the homicide, the defendant Davis had accosted some Dyer girls and gotten into an argument with their broth-ers, James and Joseph. Davis had hit James with a pistol, which discharged (in-juring no one), and then had threatened Joseph with the pistol.

Shortly thereafter, Reverend Dyer ar-rived home from church. He, James, Jo-seph and a third son, John, sought Davis out at his mother's house. Cautioning his sons to remain in the car, Reverend Dyer went to the door of the Davis residence and began discussing the previous incident with the defendant. A struggle ensued, the Dyer boys went to their father's aid,

and during the scuffling Davis' pistol discharged, killing James.

The defense at the trial was that the discharge of the pistol was an accident. Perhaps surprisingly, Davis did not claim self-defense in his testimony, and we are informed that no self-defense jury instruction was requested.

### Alleged Suppression of Favorable Evidence

The principal issue is that raised by Bill of Exception No. 6. This was perfected as to the denial of a new trial sought on the basis that the State had withheld from the defense and from the jury photographs and pre-trial statements of eyewitnesses which allegedly tended to exculpate the defendant or to contradict material in-court testimony of eyewitnesses.

In its answer to the motion for a new trial, the State commendably made a full disclosure of the pre-trial statements and photographs. Copies of them were attached to the motion.

■ Despite the contention to the contrary, the failure to disclose these pre-trial statements did not amount to the suppression of evidence favorable to the defense, such as might constitute a violation of due process. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

The statements are essentially the same as the trial testimony of Reverend Dyer and his son Joseph: that, after Reverend Dyer remonstrated with him ("you could go to jail for carrying a gun and striking"), then the defendant Davis pulled a gun—following which, Reverend Dyer, joined then by his three boys, scuffled to disarm him of the gun.

The pre-trial statements of Reverend Dyer and John are almost identical to this trial version. (John did not testify at the trial due to his absence overseas.) The pre-trial statement of Joseph says, however, that, after his father went to the door to talk to Davis, he (Joseph) saw his father and Davis tussling, and that he and his brothers ran into the house and *"At this time* I saw Linroy coming out of his pocket with a gun * * *."

The argument is thus made that Joseph's pre-trial statement that the defendant Davis did not draw his gun until *after* Reverend Dyer and Davis began fighting is more consistent with the defendant's trial testimony than with the Dyers' trial version. From this inconsistency, counsel skillfully argues that the accused was deprived of a cross-examination weapon which might have caused the jury to disbelieve Joseph's further trial testimony: that he actually saw the defendant aiming the

gun at James before James was shot. (Joseph's pre-trial version is identical as to this fact.)

We do not so hold. The seeming inconsistency between Joseph's pre-trial statement and his trial testimony might possibly be explained as a matter of imperfect articulation trying to describe the moment when Joseph observed the gun being aimed at his brother.

Assuming not, nevertheless, in essential outline the pre-trial testimony does not differ from the trial testimony of Joseph and the other witnesses: that the Dyers were unarmed, that the accused pulled his gun out of his pocket while arguing with Reverend Dyer, and that the Dyers' only object was to disarm him and turn him over to the police.

For a similar reason, we also reject the argument that the failure earlier to disclose the absent John Dyer's pre-trial statement was prejudicial, as such statement might have afforded grounds for continuance. We do not construe the statement, as does the defendant, as tending to support the defendant's theory of accidental discharge; as we read it, John stated that the defendant Davis was bringing the gun down to shoot one of the Dyers when James grabbed his arm. The gun was then fired.

■ Louisiana law does not require pre-trial discovery of statements taken from potential witnesses. Failure to disclose the present statements did not amount to a denial of due process through suppression of evidence favorable to the accused: For there is no substantial inconsistency between the pre-trial statements and the evidence introduced at the trial.

No serious contention is now made that the failure to disclose the pre-trial photographs was prejudicial.

### Other Bills of Exceptions

Objection was made and bills of exceptions perfected (Nos. 3 and 4) to the admission into evidence of a .625 mm. Beretta automatic pistol (the alleged murder weapon), and a bullet clip and two bullets removed therefrom. The objection was made that the initial link in the chain of custody of this gun had not been proven.

The basis of the objection is that the murder weapon had been taken from the accused by John Dyer. John did not testify at the trial, since he was overseas in the armed services. John had allegedly delivered the weapon to a detective at the hospital where he had brought James after the shooting.

■ The police officer testified to receiving it at the hospital from John. The subsequent chain of custody is proved up to the trial, when the gun was introduced as that received by the police officers from John.

Both Reverend Dyer and Joseph Dyer testified that John had taken the murder weapon from the accused, put it in his pocket, and left with it when he took the wounded James to the hospital. They identified the pistol introduced at the trial as resembling the murder weapon.

■ The proof of the chain of custody need not be absolute and positive. A clear preponderance on a question of admissibility is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402 (1969). This requirement is met here. See also State v. McQueen, 257 La. 684, 243 So.2d 798 (1971).

Bills were also reserved when the trial court sustained objection to questions asked Reverend Dyer on cross-examination, namely (a) whether he had ever been identified as an active participant in militant civil rights groups (No. 1), and (b) if he had ever been involved in an act of physical violence with Nancy Dyer (No. 2).

The basis for such cross-examination was, apparently, to bring into question Reverend Dyer's explanation that he had gone to the accused's house to remonstrate peacefully with him about the prior gun-incident.

■ While cross-examination is afforded a broad scope, La.R.S. 15:280, nevertheless the trial judge is vested with a sound discretion to stop irrelevant examination, La.R.S. 15:275. Further, the discretion of the trial court in determining a question of relevancy should not be disturbed in the absence of clear abuse. State v. Foreman, 256 La. 999, 240 So.2d 736 (1970); State v. Giles, 253 La. 533, 218 So.2d 585 (1969); State v. DiVincenti, 232 La. 13, 93 So.2d 676 (1957).

■ In the present instance, we are unable to say that the trial court necessarily erred in holding not germane and irrelevant Reverend Dyer's participation in civil rights activities and his alleged involvement in a prior isolated single act of violence unrelated to the present killing; and in the court's holding that admission of such answers might have opened the door to irrelevant side-issues.

On appeal, the defendant formally abandoned his remaining Bill of Exception (No. 5).

### Decree

For the foregoing reasons, we affirm the conviction and sentence.

Affirmed.