307 So.2d 338 (1975)
STATE of Louisiana
v.
Andrew HARDING.
No. 55205.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*339 Stanley E. Branton, St. Francisville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., W. Lee Overton, Asst. Dist. Atty., Cynthia P. Branton, Sp. Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Andrew Harding was indicted by the grand jury of West Feliciana Parish for the murder of an Angola inmate, Hilton Shilow. After trial by jury, he was found guilty of manslaughter and sentenced to 21 years at hard labor. Defendant appeals to this court, relying on six bills of exceptions for reversal of his conviction and sentence.
Finding merit in Bills of Exceptions Nos. 2, 3 and 4 requiring reversal of his conviction and sentence, we need not discuss the other bills in our disposition of the cause.

BILLS OF EXCEPTIONS NOS. 2, 3 AND 4
It is claimed in these bills that the court erred in refusing to allow admission of testimony as to the dangerous character of the deceased or his threats against the accused after a proper foundation had been laid showing an overt act or hostile demonstration on the part of the deceased toward the defendant.
In order to understand the context in which each of these objections and rulings were made, it is necessary to examine the evidence presented at the trial of this matter. In the first place, this was a murder prosecution allegedly committed by the inmate defendant of another inmate, Hilton Shilow, at Angola on February 10, 1973. The defense to this prison killing was self-defense.
The state offered evidence that Shilow was killed by multiple stab wounds. On the morning of the killing, the prisoners were permitted to leave their cells to take showers. Harding and Shilow did not leave. Harding later requested release from his cell for the purpose of either going to the hospital or taking a shower. *340 Harding's cell was opened by a prison official; the opening of his cell also opened Shilow's cell. A struggle then ensued between Shilow and Harding. The testimony is unclear as to the specific location of the altercation. Help was requested. Prison officials testified that when they arrived at the scene they saw Harding with a homemade knife in his hand and, after the deceased went down, they saw Harding stab Shilow in the chest. The knife was never recovered. During the scuffle, Shilow had fallen over some trash. A pair of scissors was recovered from the trash when the body was removed. None of the state witnesses saw Shilow with a weapon. However, Harding had several cuts on his hands. There is evidence that Shilow occupied the position of hallboy orderly, and, in this capacity, one of his duties was to give haircuts. In performing this function, he therefore had access to scissors. None of the state witnesses could testify as to who instigated the altercation, as they were not present at the inception of the fight. The security guard first to reach the scene testified that certain inmates were there when he arrived. In this regard, he confirmed the presence of Clarence Sullivan, Grady Brewer, James Lowe and Willie J. Harrell.
After the state completed its case, defendant called as his witness Clarence Sullivan, who lived in the same cell block as Shilow and Harding. He testified that at the time of the fight he saw Shilow pull a weapon from under his pants, but he was unable to identify the type of weapon. He further testified that Shilow had threatened defendant the night before by stating that when Harding came out for a shower in the morning he had better be ready to fight, as he was going to attack him. On cross examination, it was brought out that Sullivan was a six-time felony loser. He was then serving a 99-year sentence for armed robbery. Sullivan did not see Harding stab Shilow with a knife.
The defense then called John Rabalais, official custodian of inmate records at Angola. At the beginning of his examination, he was questioned as to Shilow's prison record. The state objected on the ground that defendant had failed to lay a proper foundation of hostile demonstration or overt act on the part of Shilow in order to permit introduction of evidence of his dangerous character. The court sustained the state's objection and did not allow Rabalais to testify. It was at this point that Bill of Exceptions No. 2 was reserved by defendant.
Defendant next called Grady Brewer, an inmate previously identified as having been present at the killing scene. He testified that he saw Shilow stop defendant and, as they were standing there, he saw Shilow come up with some sort of weapon out of his belt. Thereafter, the scuffling began. His response to the question of whether Shilow had made any advance on Harding was in the affirmative. He was then asked whether he had personal knowledge of any threats previously made by Shilow against the defendant. The state objected on the ground of remoteness. The court then stated: "The Court is going to permit Mr. Rabalais' testimony." Defendant then asked the witness whether he had heard any threats when he lived next to Shilow about a month prior to the killing. The state again objected on the ground of remoteness. The objection was sustained; defendant reserved Bill of Exceptions No. 3.
Brewer was asked if he knew Shilow's attitude toward Harding. The state again objected on the ground that an insufficient foundation had been laid as to an overt act or hostile demonstration on the part of the deceased to permit introduction of evidence of his dangerous character or of his threats against the defendant. The court sustained the objection, and defendant reserved Bill of Exceptions No. 4. At the conclusion of Brewer's testimony, defense counsel again requested permission to call Mr. Rabalais to the stand. The state again objected. The court ruled: "No, not at this time. I understand *341 if you want to go into the matter further then it might be permissible. Just let it ride." Defendant then proceeded to call James Lowe and Willie J. Harrell, inmate witnesses whose testimony was substantially the same as that of the previous inmates'. However, both of these witnesses definitely saw a pair of scissors in Shilow's hand at the start of the fight. Finally, defendant took the stand on his own behalf and generally testified that decedent had advanced upon him with the scissors and that he had killed him in self-defense.
La.R.S. 15:482[1] provides:
In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.
The trial court's factual determination that no evidence of hostile demonstration or overt act was presented, based upon its reasonable evaluation of the credibility of the witnesses and the sufficiency of the evidence, will not be disturbed on appeal unless clearly erroneous. Nevertheless, this factual determination is subject to review by this court. State v. Mitchell, 290 So.2d 829 (La.1974); State v. Foreman, 256 La. 999, 240 So.2d 736 (1970).
A review of the evidence as set forth above requires us to conclude that the trial judge erred in excluding the testimony of Mr. Rabalais as to the dangerous character of the deceased (Bill No. 2), as well as the curtailment of Brewer's examination as to threats previously made by Shilow against defendant (Bill No. 3), and Shilow's attitude toward Harding (Bill No. 4). We find that there was sufficient evidence of an overt act or hostile demonstration by the deceased to permit the introduction of this evidence. Prior to the court's rulings on these objections, there was evidence that Shilow, as a hallboy orderly, gave haircuts and had access to scissors. Furthermore, a pair of scissors had been discovered in the trash upon which the deceased had fallen. There also was evidence that defendant had received cuts on his hands during the altercation. Sullivan clearly testified as to an "overt act" by the deceased at the time of the killing and a threat on the previous night. Brewer's testimony corroborated Sullivan in respect to this "overt act." All of the state witnesses admitted that they did not see what precipitated the fight. In fact, the only evidence concerning the inception of the fight was the testimony of Sullivan, Brewer and the other inmates present at the time. Credibility or weight should not be denied the testimony of prisoners simply because of their bad backgrounds. In a prison environment, such as where this killing took place, prisoner-witnesses are often the only ones present. We find the testimony of which defendant was deprived by the rulings of the trial judge was clearly admissible and relevant under defendant's plea of self-defense.
We further reject the state's contention that the trial judge had reversed his previous ruling not permitting Rabalais to testify. While it is true that at one point there is an indication to this effect, later, when defense counsel attempted to further question Brewer about Shilow's attitude toward Harding, the court again sustained the state's objection based upon the ground that an insufficient foundation had been laid of an overt act or hostile demonstration to permit its introduction. Finally, at the conclusion of Brewer's testimony, when defense counsel again attempted to call Rabalais, the trial judge, upon objection by the state, ruled: "No, not at this time. I understand if you want to go *342 into the matter further it might be permissible. Just let it ride." It is our view that, for all intents and purposes, defense counsel's request had been rejected. Furthermore, the calling of Rabalais would not have cured the errors insofar as the curtailment of Brewer's testimony.
Hence, we consider that the trial court abused its discretion, and defendant is entitled to a new trial.
For the reasons assigned, the conviction and sentence are reversed and set aside, and the defendant is granted a new trial.
NOTES
[1] It is significant to note that in 1952, the legislature amended and reenacted La.R.S. 15:482 by substituting in place of the word "proof," the word "evidence." La.Acts 1952, No. 239, § 1. This change demonstrates, at least, a lessening of the evidence of hostile demonstration of overt act required on the part of the deceased to permit introduction of evidence of his dangerous character or his threats against the accused.