UNITED STATES of America,
Appellee,

v.

Henry Howard HARRIS, Appellant.

UNITED STATES of America,
Appellee,

v.

James BROWN, Appellant.

UNITED STATES of America,
Appellee,

v.

Charlie McCANTS, Appellant.

UNITED STATES of America,
Appellee,

v.

Henry VENNING, Appellant.

UNITED STATES of America,
Appellee,

v.

Melvin WILLIAMS, Appellant.

UNITED STATES of America,
Appellee,

v.

Ernest MOSLEY, Appellant.

UNITED STATES of America,
Appellee,

v.

Willie BROWN, Appellant.

UNITED STATES of America,
Appellee,

v.

Joseph James SIMMONS, Appellant.
Nos. 10818, 10832, 10862, 10863, 10864, 10894, 10895, 10896.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 5, 1969.

Decided April 8, 1969.

---

W. Bailey Watson, Hanahan, S. C. (E. Graydon Shuford, Jr., Hanahan, S. C., on brief), for Henry Howard Harris.

Herman Fisher, Charleston, S. C., for James Brown.

Fred Henderson Moore, Charleston, S. C., for Charlie McCants.

Coming B. Gibbs, Jr., Charleston, S. C. (court-appointed counsel), for Henry Venning, Melvin Williams, Ernest Mosley, Willie Brown, and Joseph James Simmons.

Thomas P. Simpson, First Asst. U. S. Atty. (Klyde Robinson, U. S. Atty., on brief), for the United States.

Before HAYNSWORTH, Chief Judge, BOREMAN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The appellants, assigning numerous grounds of error, challenge their convictions for conspiracy and theft of government property from the United States Naval Base at Charleston, South Carolina. We find no reversible error and affirm the judgments of the district court.

The thefts began about 1959 and continued until November 1964. Property valued in excess of $1,000,000 was removed from the base in truckload lots for sale to codefendants who maintained places of business in California, Louisiana, Florida, and South Carolina. The crime commenced in a small way when a civilian employee stole metal and sold it to a fence, who urged the thief to steal marine diesel parts. The thief lent money to the director of storage at the base and then persuaded the director to transfer him to the main diesel parts warehouse. The debt was forgiven, the conspiracy blossomed, and soon a confederation of civilian employees, naval personnel, commercial truck drivers, and dealers in marine parts began their systematic looting of the naval base. Every precaution was taken to avoid detection. Invoices were destroyed, bills of lading were forged, transportation was scheduled at times when the loading of trucks was less likely to be observed, and if the occasion demanded, the cooperative director of storage could be bribed to "call a meeting" to decoy honest employees from the scene of criminal activity.

Initially, the diesel parts were removed from the base in a government truck driven by a navy enlisted man. When this became impractical, an employee of a commercial truck line was engaged to use his company's tractor trailer units to transport the government's property from the main diesel parts warehouse. In time, the thieves feared that frequent appearance of commercial trucks at the warehouse would attract suspicion, so pallet loads of diesel parts were transported by government vehicles to a boiler shop where they were accumulated for removal from the base by commercial truck. So smoothly was this operation run that the boiler shop became a depot for dispatching property stolen from other areas in the base. The conspiracy ended November 4, 1964 when F.B.I. agents intercepted a shipment of stolen goods valued at $118,000 en route to Miami, Florida.

The first count of the indictment charged the appellants, along with 18 other persons, with violating the general conspiracy statute, 18 U.S.C. § 371, by the theft and interstate transportation of government property. It alleged the commission of 274 overt acts in furtherance of the conspiracy. Twelve substantive counts charged various defendants with receiving stolen goods, theft, or aiding and abetting others to steal, in violation of 18 U.S.C. §§ 2 and 641.[1] A number of the appellants have assigned the same grounds of error. Joint consideration of these issues, therefore, will be convenient. In other instances the assigned error relates only to individual appellants and must be considered separately.

## I.

The appellants complain that the district judge erroneously denied a pretrial motion for the production of all statements and documents in the possession of the United States Attorney and the F.B.I. that were *material to their guilt or innocence and to the degree of punishment*.[2] The district judge, believing that strict compliance with the Jencks Act [18 U.S.C. § 3500] would adequately protect the accused, denied pretrial discovery. The appellants rely upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the prosecution's suppression of a codefendant's statement favorable to an accused was held to violate due process. *Brady*, however, is inapplicable. The United States Attorney has categorically stated that he knows of no information that could aid the defendants, and counsel for the appellants do not charge in their briefs that favorable evidence was suppressed. We previously have held that *Brady* does not require the trial court to make an *in camera* search of the government files

1. The appellants received the following sentences: Henry H. Harris, former director of storage, 5 years on count one and a consecutive sentence of 10 years on count eleven; Melvin Williams, a stockman, 5 years on count one; Henry Venning, a stockman, 9 months on count three; and government truck drivers, Charlie McCants, 5 years on count one; Joseph J. Simmons, 4 years on count one and a consecutive sentence of 1 year on count five; Ernest Mosley, 3 years on count one and a consecutive sentence of 1 year on count six; Willie Brown, 4 years on count one; and James Brown, 18 months on count one.

Defendants who were convicted, but do not have appeals pending, received the following sentences: Lamar Dennis, a fence, 8 years; William E. McCranie, an employee of a commercial truck line, 8 years; commercial truck drivers, Jimmy L. Gause, 5 years, and Herman McGill, 5 years; Alfred Fishburne, a stockman, 7 years; Melvin McEuen, a fence, 8 years.

The defendants who entered guilty pleas received the following sentences: Gordon W. Hilliard, a stockman, 13 years; Philip Bodne, a fence, 16 years; Benjamin B. Rogers, an enlisted man, 3 years; and Simon Taylor, a stockman, 7 years.

The charge against one defendant was nol prossed. The court directed verdicts of acquittal for two others. The jury found five defendants not guilty, and two of the defendants, Venning and Gause, were acquitted on some counts but convicted on others.

2. All appellants except Henry H. Harris and James Brown joined in this assignment of error.

for evidence favorable to the accused, United States v. Frazier, 394 F.2d 258, 262 (4th Cir. 1968), and other courts have ruled that Brady does not require pretrial discovery. Archer v. United States, 393 F.2d 124, 126 (5th Cir. 1968); United States v. Turner, 274 F.Supp. 412, 417 (E.D.Tenn.1967); United States v. Gleason, 265 F.Supp. 880, 883 (S.D. N.Y.1967).

Statements of every government witness were made available immediately after direct examination in accordance with the requirements of the Jencks Act, and the appellants have cited no specific instance where production of documents under the statute, in lieu of pretrial discovery, resulted in prejudice. We find no abuse of the discretion allowed the district judge under Rule 16 of the Federal Rules of Criminal Procedure.

## II.

The appellants also assign error to denial of their pretrial motion to sequester four witnesses, three of whom were codefendants who had pleaded guilty, and the fourth, a conspirator who was not indicted.[3] The sequestration of witnesses, long practiced in English and United States courts, rests within the sound discretion of the trial judge, Taylor v. United States, 388 F.2d 786, 788 (9th Cir. 1967); Milanovich v. United States, 275 F.2d 716, 720 (4th Cir. 1960), *rev'd on other grounds*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); 6 Wigmore, Evidence § 1837 (3d ed. 1940), and his ruling will not be reversed "in the absence of manifest prejudice resulting from the presence of witnesses during the trial of the case." Mitchell v. United States, 126 F.2d 550, 553 (10th Cir. 1942). The district judge, mindful that sequestration should not be lightly denied, heard extensive argument on the motion. The principal reason for initially denying sequestration was to allow defendants who had pleaded guilty to hear evidence that might bear upon their punishment. A separate hearing on the pleas of guilty, however, could have accomplished the same result. Upon review, therefore, we deem it more important that the record discloses no prejudice to the defendants on trial. The appellants have been unable to cite any instance of a witness being influenced by the testimony of another. Moreover, thorough cross-examination, conducted with the benefit of pretrial statements furnished under the Jencks Act, failed to reveal shifts in testimony that could be attributed to the witness' presence in the courtroom. Cf. Williamson v. United States, 310 F.2d 192, 198 (9th Cir. 1962).

## III.

Henry Harris complains that the district judge improperly denied his motion for a severance. The incident came about in this fashion. A conspirator, under cross-examination by counsel for another defendant, was asked to read a portion of his own statement that he had previously given the F.B.I. He read that a codefendant paid him by placing money in a white envelope and that he had seen similar envelopes for Harris. At the time, Harris' counsel made no objection, but the next day he moved for a severance. The district judge overruled the motion but offered to have the witness recalled for further cross-examination. Harris' counsel declined this offer.

Even though the witness' statement implicated Harris, we find no reversible error. The vice of using a postconspiracy statement that implicates another defendant lies in the denial of Sixth Amendment rights of confrontation and cross-examination when the author does not testify. Then severance is imperative. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Here, on the contrary, the author of the statement could be fully cross-examined about his testimony and his prior declarations concerning the payoff envelopes. Error, if any, lay in the inadvertent introduction of a prior consistent statement. This, however, does

---

**3.** All appellants except Charlie McCants and James Brown joined in this assignment of error.

not require a severance or reversal. Cf. United States v. Safley, 408 F.2d 603, (4th Cir. 1969).

Closely related is Charlie McCants' complaint that conspirators were permitted to refresh their memories while testifying by referring to their own statements which they had previously given to the government, and, in one instance, by notes the witness made from his original records. The papers were not introduced in evidence. This use of a witness' own statement only for the purpose of refreshing his recollection was not objectionable. Jones v. United States, 282 F.2d 745, 747 (4th Cir. 1960), *cert. denied,* 365 U.S. 842, 81 S.Ct. 799, 5 L.Ed.2d 808 (1961); United States v. Riccardi, 174 F.2d 883, 888 (3rd Cir. 1949).

### IV.

Ernest Mosley complains that after he admitted on cross-examination a prior conviction for defrauding the government, he was denied an opportunity to offer an explanation on redirect examination. The trial judge, however, received Mosley's version of the crime before sentencing when it was offered in mitigation of punishment. Mosley's previous offense was the alteration of the date of an $18.75 government bond.

Impeachment by showing a prior conviction raises a collateral issue that bears only upon the credibility of the witness. While it is impractical to retry the previous charge, Wigmore notes that it is a "harmless charity" to allow the witness to briefly explain the circumstances of the prior conviction with due regard to the penalties of perjury. 4 Wigmore, Evidence § 1117 (3rd ed. 1940). But denial of an opportunity to give an explanation, while termed "technically wrong," United States v. Boyer, 80 U.S.App.D.C. 202, 150 F.2d 595, 596 (1945), has never been a ground for reversal. United States v. Crisafi, 304 F.2d 803, 804 (2d Cir. 1962). In the light of the evidence of Mosley's guilt,

we find no prejudice in the limitation the district judge placed upon redirect examination. Furthermore, at the time the impeaching testimony was introduced the court explained that it could be considered only for its effect on the witness' credibility. In view of this, we find no plain error in the omission of a similar instruction in the court's charge when no objection was offered by the defendant as required by Federal Rule of Criminal Procedure 30.

### V.

Two of the defendants, Henry Harris and Henry Venning, contend that the district judge erred in denying their motions for acquittal of the charges contained in substantive counts. In passing upon their motions, it was the duty of the trial judge to determine whether there was "substantial evidence which, taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt." Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950).

Harris, the storage director at the navy yard, challenges the sufficiency of the evidence to sustain his conviction for aiding and abetting in the theft of 10 pallets of diesel parts in February 1963. The testimony disclosed that from time to time one of the thieves paid Harris to "call a meeting" so that other employees would not be present when diesel parts were moved from the warehouse. In February 1963, the stockman who usually arranged for Harris to call a meeting became ill before 10 pallets of parts could be moved to the boiler shop, and without a meeting to shield the move, the thieves were afraid to act. When this situation became known to the dealer in diesel parts who acted as the principal fence, he telephoned Harris and requested that a meeting be called. Harris agreed, the thieves were reassured, the parts were moved, and the fence paid Harris $5,000.

Harris contends that this evidence showed involvement only in the conspir-

acy, and that it failed to prove the specific crime charged in the substantive count. However, there was ample evidence to link the theft of the 10 pallets in February 1963 with Harris' promise to call the meeting and his receipt of money for the performance of his promise. Clearly, he aided and abetted this specific theft, and the trial judge properly overruled his motion for acquittal.

 Venning, who worked in a warehouse on a pier, challenges the sufficiency of the evidence to support his conviction for receiving stolen goods as charged in a substantive count. Venning sent a partial pallet of parts, two typewriters, and two electric handsaws to the boiler shop for removal from the base. Later he appeared at a conspirator's place of business in town and received one typewriter and one saw. He contends the evidence does not establish government ownership of the articles he received.

Venning's objection is without merit. His utilization of the boiler shop to ship typewriters and saws along with stolen diesel parts permits the inference that the typewriter and saw which he later received were government property.

## VI.

Two other defendants, James Brown and Willie Brown, contend the evidence was insufficient to show that they knowingly intended to participate in the conspiracy.

James Brown was indicted only for conspiracy. He was charged in two overt acts with transporting diesel parts from the warehouse to the boiler shop at various times in 1963, for which he was paid by a conspirator. The court struck another overt act that charged similar transportation in 1964.

 A conspirator testified that on one or two occasions—possibly only once—James Brown brought pallets of diesel parts from the warehouse to the boiler shop. He then notified the conspirator of his arrival and received $10 or $15. James Brown did not testify, and he does not dispute these facts. Instead, he argues that in a multiparty conspiracy, one transaction provides an insufficient basis for drawing an inference of guilty knowledge. The cases upon which he relies, however, are inapposite.[4] They involved the isolated sale, purchase, or delivery of narcotics on the periphery of conspiracies involving illegal importation and distribution of drugs. James Brown, however, did not act in isolation. He served as a link between the conspirators in the warehouse and the conspirator in the boiler shop. And contrary to his assertion, a single act may involve a person in a conspiracy if from the act an intent to participate may reasonably be inferred. See United States v. Aviles, 274 F.2d 179, 189 (2d Cir.) (dictum), cert. denied, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960). Direct evidence of participation is unnecessary. The jury may find the elements of the crime from all the circumstances. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Here there was sufficient evidence to submit his case to the jury and to sustain its verdict of guilt. He had been employed in the navy yard for 15 years. As a truck driver, he knew that he received orders to pick up legitimate loads only from a transportation dispatcher, but no dispatcher sent him to the warehouse. Generally, the destination of his load was shown on an invoice taped to the crate or placed in an envelope, but no invoices accompanied the stolen goods he moved to the boiler shop. Finally, the jury could infer from the payment he received for his part in transporting the goods that he knew he was participating in an illegal transaction with fellow employees.

4. United States v. Aviles, 274 F.2d 179 (2d. Cir.), cert. denied, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960); United States v. Stromberg, 268 F.2d 256 (2d. Cir.), cert. denied, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); United States v. Reina, 242 F.2d 302 (2d Cir.), cert. denied, 354 U.S. 913, 77 S.Ct. 1294, 1 L.Ed.2d 1427 (1957).

A similar contention made by Willie Brown is also without merit. From time to time he delivered about 20 pallets of stolen diesel parts to the boiler shop and received over $300. We find no error in the district judge's denial of his motion for acquittal. His repeated activities, considered in the light most favorable to the government, establish knowledge of the conspiracy and his willing participation.

We find no substance in the other assignments of error.

The judgments are affirmed.