DIXON, Justice.
Carlo H. Montalbano was accused of the April 17, 1969 aggravated battery of Wil *885 liam Gennell (Grannel). After a jury-found him guilty, he was sentenced, and appeals his conviction. Several Bills of Exceptions were reserved, and four have been briefed and argued before us.
Bills of Exception Numbers 2 and 3 refer to questions directed to a prosecution witness concerning a prior written statement, and are accumulated under the first specification of error. Bill of Exception Number 6 refers to a ruling of the court prohibiting the introduction into evidence of a certain letter, and is argued as the second specification of error.
The third specification of error is presented by Bill of Exception Number 7. The defense requested' a special charge to the jury concerning self-defense, and contends the trial court erred in refusing the charge.
In his per curiam, the trial judge explained the refusal: since the defense presented was that the defendant did not strike the victim, and did not raise self-defense in “questioning, testimony or argument,” the charge requested was not relevant to the case.
Code of Criminal Procedure article 807, second paragraph, provides:
“A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.”
If the requested special charge is pertinent, it must be given. To determine its pertinence requires an examination of the testimony of witnesses, since Montalbano himself did not testify.
The altercation in which the victim Grannel was seriously injured took place at about 2:30 in the morning in the French Quarter in New Orleans. A group of four drinking companions became embroiled with a barkeeper and three other persons who were either his employees, kinfolks or friends. The defendant’s group was armed with clubs of some kind. The defendant himself used a toy baseball bat. The victim and his group were apparently unarmed.
The prosecution witness Luden Clancy testified that he and his three companions, Bill Grannel, Bobby Slack and Kenneth Smith, having spent some time drinking, were walking down the sidewalk and were “invited” to come into the Blue Angel to see the show. Montalbano was identified as the one who invited the group. Clancy did not want to go in; Grannel went into the place, stayed a few minutes and walked back out. There was then bickering between the partying group and Montalbano about the price of drinks and the girls. Clancy said he saw a club behind Montalbano’s thigh, and urged his- companions to *887 leave as-“we are fixing to get in trouble.” Clancy walked a short distance away, turned to see if his companions were following him, and then saw Montalbano hit Grannel on the head with a toy baseball bat. Clancy saw three other men with clubs join Montalbano.
On cross-examination, Clancy testified that he heard conversation about the defendant’s nose thus:
“A. Bill Grannel, he didn’t use pull, he said, I will twick you on the nose.
“Q. Did he make any move towards the defendant when he did that?
“A. I think he illustrated with his hand.” (Record, 114-115).
The exact time and the sequence of events is difficult to ascertain from Clancy’s testimony, as from the others. Clancy indicated that after the conversation and demonstration concerning the tweaking of Montalbano’s nose, Clancy turned to leave, having seen the club in Montalbano’s hand. When Clancy turned back to see if his companions were following, he saw Montalbano strike Grannel with the bat.
Kenneth Smith stated that the party passed the Blue Angel and Grannel and he stood at the door. Grannel entered, then walked back out, having some words with Montalbano about the price of drinks, etc. Montalbano said something about Bill’s nose and Bill said something to him. Montalbano went into the Blue Angel and came back out to continue the argument. Montalbano asked Smith if he wanted to fight. Smith saw the club behind his back and started down the street when three other people with clubs appeared, some coming out of the Blue Angel. Smith said everyone was swinging and he saw Grannel on the ground, but did not see who hit him. Smith suffered numerous bruises on his knees, legs, chin, head and arms. Smith denied any knowledge of any person attempting to strike Carlo Montalbano before the attack. Smith wasn’t aware at the time that he had been hit, and he did not see Grannel get hit. He said that he was trying to back away from the four men with clubs.
Police Lt. Edward O’Donnell testified, on cross-examination, that the defendant told him that Grannel walked into the night club, was offered a seat, declined and re-, turned to the sidewalk. There, Montalbano said that he became, involved in an argument with Grannel and Grannel told. him that he would tweak his nose. While this argument was taking place, Montalbano said that Smith walked up and told Montalbano “do you want to try me?” Montalbano, O’Donnell related, said that by this time he had gotten his baseball bat and when threatened by Smith, side-stepped to avoid Smith. Smith then attacked Montalbano, and then Montalbano struck Smith *889 across' the legs. Montalbano denied striking Grannel.
Thus, the statement made by Montalbano to Lt. O’Donnell presented to the jury Montalbano’s claim that he was attacked by Grannel’s companion.
The defense witness Fasspender testified that Montalbano and Grannel’s group were on the sidewalk after having some words. Montalbano told them to move on, and “the fellow said he was going to take a twick of Carlo’s nose, .and he grabbed for his nose and Carlo stepped aside and out the doorway, you know, reflected his arm aside * * * ” Then, according to the witness, another one of the group offered to take on Carlo. Some more conversation ensued and Carlo wound up swinging at one of the group, not Grannel. According to this witness, Carlo did not strike Grannel. Fasspender, identified on cross-examination as the defendant’s brother-in-law, said that “one of the fellows twicked for his nose and he reached inside.” Reaching inside, Carlo obtained the bat from inside the door. The witness denied seeing Grannel actually touch the defendant.
The defense witness Chapman was employed as a doorman by Carlo. He identified Grannel as having come into the club and ‘ utter a profane shout. Montalbano asked him either to sit down or leave, whereupon Grannel left and called Montalbano dirty words saying “I am going to twick your nose.” Chapman then said Grannel put his hand up and went toward Montalbano “like he was going to twick his nose.” Montalbano moved aside and pushed the doorman Chapman back inside the club and called to one of the group to take his buddies up the street. After some more conversation another of the partying group, according to Chapman, stepped toward Montalbano saying “try me” and then lunged at Montalbano, trying to hit him. Montalbano hit his attacker, later identified as Kenneth Smith by the witness Chapman, on the legs. Chapman then said he saw Grannel go toward Montalbano, who did not see him coming. Chapman stepped out and Grannel “came falling back to me, which I hit him.” Chapman later claimed that the man he hit was not Grannel but was Smith.
The defense witness, William Kroust, testified that one of the party group reached out at Montalbano’s face; Montalbano then moved toward the street and Kroust noticed the bat in his hand. Another man moved at Montalbano “with the right fist up.” When this man swung at Montalbano, Montalbano crouched over and began hitting him on the shins and knees with the bat.
Thus, it is readily seen that there is testimony in the record indicating that the victim or some of his companions, acting in *891 concert, either attacked Montalbano (Lt. O’Donnell’s testimony), or attempted to tweak his nose and tried to hit him (Chapman’s testimony), or swung at Montalbano with his fists (ICroust’s testimony). A self-defense instruction became pertinent. The issue was for the jury to decide. The requested charge should have been given.
It is not necessary to pass on the other two specifications of error, since the bills supporting them were reserved to rulings on the admissibility of evidence.
For the reasons assigned, the conviction is reversed and the sentence is set aside; the case is remanded for a new trial.