311 So.2d 230 (1975)
STATE of Louisiana
v.
Danny L. GROVES.
No. 55360.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*232 Marion Overton White, Joshua J. Pitre, Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., for plaintiff-appellee.
*233 SUMMERS, Justice.
This is a prosecution for murder arising out of a killing on April 27, 1973 in which self-defense has been urged by the defendant Danny L. Groves. He was tried by a jury on February 25, 26 and 27, 1974, found guilty and sentenced to life imprisonment, with credit for time spent in actual custody prior to sentence. See La.Crim.Code art. 30 (1928); State v. Curry, 263 La. 997, 270 So.2d 484 (1972); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972). At the trial, 32 bills of exceptions were reserved. Eighteen have been perfected and urged here as thirteen assignments of error.
Groves is charged with murder for killing Coreal Peace on the 27th of April 1973 at the Rod and Gun Club in DeRidder, Beauregard Parish. Both are black. The Rod and Gun Club is a saloon or bar catering mostly to black customers. Pool tables and other amusement apparatus are provided for its customers. On the day of the alleged crime, Groves and his younger brother Lawrence Jefferson, Jr., a juvenile, were in the Rod and Gun Club playing pool. The victim, Coreal Peace, was present, drinking alcoholic beverages and moving about the place.
Peace and Jefferson entered into an argument over the fact that Peace removed a pool ball from the table and placed it in his pocket. Jefferson, in a fit of anger, stormed out of the club and ran to the nearby house of his parents where he obtained a loaded shotgun and a large knife. In the meantime Groves walked outside. He was talking to someone nearby when Jefferson came running back to the Club with the shotgun. Groves met him and took the gun from him. They then entered the club where Groves shot Peace.

Bill 1
This first bill is relied upon as the basis for an equal protection argument. The contention is that the trial judge erred in denying Groves' motion to quash the jury commission, and the grand and petit juries, when the facts established a prima facie case of racial discrimination; or, alternatively, the circumstances provided an opportunity to commit racial discrimination against black people and women in the selection and composition of the jury commission and the grand and petit jury venires.
Relying upon Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), this Court has repeatedly held that exclusion of women from jury duty unless they manifested their willingness to serve as required by Article VII, Section 41 of the Constitution and Article 402 of the Code of Criminal Procedure violates no constitutional guarantee. State v. Jack, 285 So.2d 204 (La.1973). Notwithstanding this often repeated stand, on January 21, 1975 the United States Supreme Court, in the case of Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 held that Louisiana's jury selection systems with respect to women deprived those tried in this State of their Sixth and Fourteenth Amendment Rights to an impartial jury. In the case of Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790, 1975 it was held that the rule of the Taylor Case would not be applied retroactively to convictions obtained in trials by juries empaneled prior to January 21, 1975, the date of the decision in the Taylor Case.
For these reasons, the claim of denial of equal protection by reason of Louisiana's jury selection procedure for women is governed by our adjudications at the time of the trial, in February 1974, prior to the Taylor Case. That is to say, the jury selection process for women, when the jury in the instant case was selected, was valid in all respects. No federal question is presented before January 21, 1975. Devall v. Louisiana, 420 U.S. 903, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975).
And the claim of racial discrimination is not established by the record. Although *234 the evidence supports the finding that no blacks served as members of the jury commission since 1960, there is no showing that none served prior to that time. Since members of the jury commission consist of the elected clerk of court and four other persons appointed by the district court, who serve at the court's pleasure, La.Code Crim.Proc. art. 404, the mere absence of blacks in that office at this time is not evidence of systematic discrimination against Negroes. State v. Barksdale, 247 La. 198, 170 So.2d 374 (1965), cert. denied, 382 U.S. 921, 86 S.Ct. 297, 15 L.Ed.2d 236. See also State v. Douglas, 256 La. 186, 235 So.2d 563 (1970), cert. denied, 401 U.S. 914, 91 S.Ct. 888, 27 L.Ed.2d 814; State v. Pratt, 255 La. 919, 233 So.2d 883 (1970).
Discrimination in the selection and composition of the grand and petit jury venires is also not established. There were ten whites and two blacks who served on the grand jury which indicted Groves. It is inferred from the testimony that the population of the parish is approximately 22,000, with 18,000 whites and 4,000 blacks. Jury commissioners select the names of citizens for the general venire who have been residents of the parish for one year. Persons selected need not necessarily be registered to vote, or to be property owners. The grand jury is drawn indiscriminately from the general venire box consisting of 400 names. There were ten blacks on the general venire and five on the petit jury venire.
No evidence appears in this record indicating in any way that there was purposeful discrimination, or systematic exclusion of any cognizable group in the composition of the jury venires or the juries which indicted or convicted Groves. Purposeful discrimination will not be presumed under these facts. State v. Douglas, supra.

Bill 2
In examining prospective jurors the trial court decided to seat twelve prospective jurors in the jury box. Each was then to be examined in the presence of the others. The defense objected to this procedure and moved for the sequestration of all prospective jurors save the one being examined. It was contended that the proposed procedure deprived the accused of a fair and impartial jury. The motion was denied and this bill was reserved.
Article 784 of the Code of Criminal Procedure fixes the standard for selection of the petit jury panel, requiring that "In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court." As the comments to that Article explain, "Details such as whether the jurors should be called singly or by groups of two, three, etc., are left to the court's discretion." Our decision in State v. McAllister, 253 La. 382, 218 So.2d 305 (1969), supports the trial judge's ruling. There is no merit to this bill.

Bill 3
While assigning the subject matter of this bill as error, no argument to support the bill is found in the defense brief. From the bill as perfected, however, it is shown that James Alvin Gray was being examined as a prospective juror. Questioning of him by the prosecution revealed that Gray was manager of a car dealership and that the district attorney had purchased an automobile from that place of business. He testified, however, that this fact would not prevent him from being completely fair and impartial to the defendant if he were selected as a juror. On this basis defense counsel challenged Gray for cause. The challenge was denied, after which this bill was reserved and defense counsel exercised a peremptory challenge.
The official minutes reflect that the defense exercised only eleven peremptory challenges. Article 799 of the Code of Criminal Procedure provides that the defendant is entitled to twelve peremptory challenges in this case. Under these circumstances, "A defendant cannot complain *235 of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel." La.Code Crim.Proc. art. 800. (This same authority applies to bill of exceptions 4 and 5.)
A review of all the evidence on this prospective juror convincingly demonstrates, moreover, that there was nothing in his relationship with the district attorney which would influence his judgment or that would persuade him to decide the case on any basis other than fairness and the evidence presented in court.
This bill has no merit.

Bill 6
Just prior to the commencement of trial, defense counsel moved for a dossier of all the State witnesses, especially that of the victim, basing this motion upon the authority of United States v. Eley, 335 F.Supp. 353 (N.D.Ga.1972). In that case the court stated that the discovery request was based on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It was held there that the requirements of due process prohibit the prosecution from withholding favorable evidence from an accused which would tend to exculpate him or reduce punishment. Numerous courts have held that Brady does not speak to pretrial discovery. E.g. United States v. Moore, 439 F.2d 1107 (6th Cir. 1971); United States v. Sklaroff, 323 F.Supp. 296 (S.D.Fla.1971); United States v. King, 49 F.R.D. 51 (S.D.N.Y.1970); United States v. Gardner, 308 F.Supp. 425 (S.D.N.Y.1969); United States v. Zive, 299 F.Supp. 1273 (S.D.N.Y.1969); United States v. Zirpolo, 288 F.Supp. 993 (D.N.J.1968); United States v. American Oil Co., 286 F.Supp. 742 (D.N.J.1968); United States v. Armantrout, 278 F.Supp. 517 (S.D.N.Y.1968); United States v. Manhattan Brush Co., 38 F.R.D. 4 (S.D.N.Y.1965). See also United States v. Harris, 409 F.2d 77 (4th Cir. 1969), cert. denied, Brown v. United States, 396 U.S. 965, 90 S.Ct. 443, 24 L.Ed.2d 430 (1969); United States v. Cobb, 271 F.Supp. 159 (S.D.N.Y.1967).
The court in Eley continued, saying,
"Clearly an accused would prefer that the court order the prosecution to turn over its entire file to him for inspection so that he may determine which material is favorable to him and which is not. But Brady calls only for the disclosure by the prosecution of evidence favorable to the accused . . . ."
These are the propositions with which the court was concerned there. It is noted also that the decision of the Eley Case in a Federal District Court is not authoritative here.
Apparently the defense motion was made orally. The recitals of the bill of exceptions, which have been repeated here, make no claim for exculpatory evidence in the State's possession. And no reference to exculpatory evidence appears in the minute entry concerning the motion. On this showing, therefore, this is not a Brady situation which the State and the trial judge were called upon to consider. It is, instead, a motion for pretrial discovery generally.
As a general proposition the State is not required to produce evidence it intends to use at the trial, except in limited circumstances not pertinent here. State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). Moreover, the bill has not been argued in brief and under the Court's practice the matter may be considered abandoned.

Bill 7
Defense counsel objected when the trial court permitted Dr. Henry S. Carter to testify from a manuscript in his handwriting, identified to be hospital records. The testimony concerned the victim's condition when he arrived at the hospital. The defense insistence that someone be called to identify the manuscript as a hospital record was without merit. The doctor testified *236 without contradiction that the entries on the manuscript were made by him in his own handwriting and formed part of the hospital record. There is no merit to this bill and no authority is cited to support the defense contention.

Bill 8
Dr. Carter was asked on cross-examination by the defense if he found any articles on the victim when he was brought to the hospital. He replied that he did not search his clothing, the sheriff's department having taken charge of the victim's personal effects. He was also asked if any alcoholic beverage or drug was found on the victim. He again stated that he did not search the victim. In addition, defense counsel referred to the victim's wounds during cross-examination.
When the witness was tendered, the prosecutor asked, "Doctor, a few more questionsdid you remove anything from the body of this man?" Then defense counsel objected, and the objection was overruled. It is the defense contention that the question was not related to any subject brought out on cross-examination. As the foregoing recital makes clear, whether anything was taken from the victim's body had been the object of several questions on cross-examination and was therefore a proper subject for questioning by the prosecutor on rebuttal. When the witness answered that he took shot and wadding from the wound, the answer was proper. This bill has no merit.

Bill 10
Bolivar Bishop, Sheriff of Beauregard Parish, was called as a State witness. He testified that he saw the body of the deceased at the hospital while Dr. Carter was conducting his examination and that he requested that the doctor perform a partial autopsy. The shot and wadding the doctor removed from the wound were placed in separate bottles and delivered to the sheriff who turned them over to a deputy.
On cross-examination it developed that the sheriff had seen the jury outside the courtroom on two occasionsonce, the night before, and the second time, on the morning he testified. On each of these occasions the jurors were having dinner or breakfast in the same restaurant where he ate, but at different tables in a different part of the restaurant.
He testified that three members of his force were necessary to transport the jurors in three separate cars to and from the courthouse and motel. The sheriff testified that on one occasion he transported three or four of the jurors from the motel to the courthouse, a trip which took three or four minutes.
After the sheriff testified, the defense moved for a mistrial, alleging that the jury would be improperly influenced by his testimony as he had charge of them. The Court denied the motion.
It should be noted that the sheriff was not a leading witness. His testimony in the presence of the jury dealt solely with the autopsy at the hospital. Later during the trial he testified that he was present when the accused gave a statement to one of the police officers, which he witnessed. This latter testimony, however, was given outside the presence of the jury to establish the voluntary character of the statement which was never used in evidence and was never before the jury.
We note that the testimony of the sheriff before the jury concerning the examination by Dr. Carter in the hospital was neither vital nor seriously controverted, being purely formal. Dr. Carter also testified to these facts, and the sheriff's testimony on that aspect of the case was merely cumulative. There is, moreover, no showing that the sheriff conversed with any juror about the case during the brief three or four minutes when he drove them to the courthouse from the motel. Furthermore, it must be recognized that no showing has been made that the sheriff acted irregularly or that any *237 prejudice resulted to the defendant by the sheriff's actions.
"A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication. . . ." La.Code Crim.Proc. art. 791. The sheriff or his deputy is the proper officer to take custody of the jury during recess for meals and to be transported to and from lodgings. This record also shows that it was necessary to use three automobiles to transport the jury from the motel to the courthouse and that three officers were required on those occasions to maintain the supervision Article 791 requires. State v. Cuchinelli, 261 La. 789, 261 So.2d 217 (1972).
Article 791 does not require that the jury be kept continually in one single group; it merely requires that jurors be sequestered so as to be secluded from outside communication. State v. Cuchinelli, supra.
The peculiar facts of Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), make that case inapplicable here. There the court pointed out that the association of two deputies with the jury was intimate and prolongedfor three days. The opinion also emphasized that the testimony of the two deputies was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. They were leading witnesses of the prosecution. In the instant case, the testimony of the sheriff did not bear upon the guilt of the accused, it only tended to corroborate the doctor's testimony establishing the corpus delicti and the character of the weapon which inflicted the wound. As already pointed out, the sheriff had no prolonged, intimate contact with the jury.
The accused was denied no constitutional or statutory right and this bill has no merit.

Bills 12, 18, 20 and 27
Defense counsel objected and reserved these bills to the rulings of the trial judge which denied him the right to elicit from the witness Lawrence Jefferson, Jr. and the accused, evidence of the dangerous character of the victim or of his threats against the accused. The trial judge was of the opinion that there was no evidence of hostile demonstration or overt act on the part of the victim as required by Section 482 of Title 15 of the Revised Statutes.[1]
Although Jefferson was a brother of the defendant, he was called by the State as its witness. On cross-examination defense counsel sought to elicit testimony concerning the dangerous and bad character of the deceased victim. The trial judge denied the defense the right to elicit this testimony, for the predicate to its introduction was not established. There was no evidence of hostile demonstration or of overt act on the part of the slain victim, except the statements of Jefferson and the accused that the victim made a motion with his hand toward his pocket just before he was shot. The trial judge, in an abundance of caution, permitted defense counsel to examine Jefferson out of the presence of the jury in an effort to establish evidence of a hostile demonstration or overt act on the part of the deceased. In addition, at defendant's request he was permitted to take the stand and testify, out of the presence of the jury, for the same purpose.
The trial court's factual determination was correct. There was no evidence of hostile demonstration or an overt act on the part of the victim such as would render admissible evidence of dangerous character of the deceased or threats allegedly made by him against the accused. His ruling based on a reasonable evaluation of the credibility of the witnesses and the *238 sufficiency of evidence is subject to review but will not be disturbed on appeal unless clearly erroneous. State v. Mitchell, 290 So.2d 829 (La.1974) and cases cited there. See also State v. Harding, 307 So.2d 338 (La.1975), and State v. Jackson, 308 So.2d 265 (La.1975), decided at our last sitting.
As the trial judge made clear in his per curiam, because the only evidence adduced to support a finding of hostile demonstration on the part of the victim was that given by the accused and his brother, and this was self-serving and contradicted by the testimony of other witnesses present at the time of the shooting, there was not sufficient credible evidence to justify admission of testimony of the victim's dangerous character or threats against the accused.
As we said again in State v. Weathers, 304 So.2d 662 (La.1974):
"Only the self-serving declaration of the defendant in the instant case tends to support the claim that a hostile demonstration or overt act occurred. It was therefore largely within the discretion of the trial judge to determine whether the evidence of hostile demonstration had been shown by credible evidence, for such a showing was a predicate to a showing of dangerous character. The ruling should not be disturbed."
It is not any testimony which will satisfy the requirement of Section 482 of Title 15 that there be "evidence" of hostile demonstration or overt act. It does not become evidence unless, in the opinion of the trial judge charged with determining the weight of the testimony, it is credible and competent to establish the facts which are necessary to constitute a hostile demonstration or overt act. Hostile demonstrations or overt acts must moreover be of such a character that they indicate a purpose to do defendant serious bodily harm. If the testimony is so incredible because of its self-serving character and the contradictions established against it that it has no weight in the judgment of the trial judge it is, in effect, no evidence. Thus, to be evidence, the testimony of hostile demonstration or overt act must be such that its reception would establish hostile demonstration or overt act, otherwise it is not evidence of these facts.
Underlying the principles announced here is this rationale observed by Wigmore from the lessons taught by experience and the cases:
"The abstract validity of the principle cannot be doubted. That the deceased's reputation should in such situations be accepted as affecting the defendant's apprehension is clear. But the unconditional and indiscriminate admission of such evidence is dangerous. The danger is, not only that the deceased's reputed character, once in evidence, will be appealed to as justifying the deliberate destruction by private hands of a detested malefactor, but also that, though no plausible situation of self-defense is otherwise evidenced, this evidence will be improperly used to confuse the issue as if there were real doubt about the necessity for defense and the apprehension of danger. . .." II Wigmore on Evidence (3d ed. 1940) ¶ 246.
Wigmore continues:
"Another and more specific form of limitation is the doctrine of `overt act', peculiarily developed in Louisiana and Florida. The notion here is that the deceased's reputation can have a `bona fide' bearing on the defendant's apprehension only where there occurs, at the time of the affray, some conduct of the deceased which might be otherwise colorless, but when interpreted by his known character becomes apparently an act of aggression. Thus there must be some `overt act', i.e. of possible aggression, before the reputation-evidence can be received . . .

*239 "Two peculiar questions may arise under the overt-act form of the doctrine. (1) Shall the question whether an overt act is sufficiently evidenced to lay the foundation for the reputation-evidence be left entirely in the hands of the trial Court? Unless our law is to become a mass of quibbles which no practitioner can master and every murderer will welcome, the answer must be in the affirmative. . . ." Id.
This bill has no merit.

Bill 13
The State sought to introduce in evidence the bloodstained shirt of the victim, to which the defense objected that it was inflammatory and immaterial and designed solely to inflame the minds of the jury. From the record and the exhibit the trial judge observed that though the shirt had what appeared to be bloodstains on a torn portion, there was nothing unusually gruesome about it. It was the judge's understanding that it was offered in evidence and exhibited to the jury as having some bearing on the location of the shotgun discharge which struck and killed the deceased, as well as possibly reflecting the distance the shot traveled and the area of decedent's body struck. He felt the possible probative value of the exhibit to the jury outweighed any possible inflammatory effect it might possibly have upon the jury. For these reasons, we find no merit to this bill.

Bill 23
During the course of the trial, the judge noted that one of the jurors appeared to be taking notes. When questioned about it by the judge, the juror admitted he had in fact just begun doing so. He apologized because he did not understand that note-taking was impermissible.
He was then advised by the judge not to take notes and to rely on his memory. The juror was then instructed to tear off the page containing his notes in the small notebook he was using. He complied, and the page was destroyed by the bailiff.
Defense counsel moved for a mistrial which the judge denied, ruling there was no prejudice to the accused.
Although Article 793 of the Code of Criminal Procedure requires that a juror must rely upon his memory in reaching a verdict and ordains that he "shall not be permitted to refer to notes or to have access to any written evidence," it is the view of this Court that under these circumstances the error is harmless and does not constitute a substantial violation of a statutory right. La.Code Crim.Proc. art. 921.
In State v. Ledet, 298 So.2d 761 (La.1974), the purpose of the rule is stated in these terms:
"The essential reason for the prohibition is that a note-taker may unduly influence the jury by reference to the notes and that, if the notes are inaccurate and incomplete, the parties before the court may be prejudiced by the jurymen's acceptance of them in preference to actual testimony heard by them and their individual memory, if any, of it."
Only a casual reference to the circumstances of this case make it convincingly clear that the rule has not been violated, except in a highly technical sense, in no way contrary to the real object of the statute.
This bill has no merit.

Bill 25
During the trial, in the presence of the jury, after examination by the State and the defense of the defendant's brother Lawrence Jefferson, a state witness, he was questioned by the judge. The witness had been questioned to ascertain whether an overt act or hostile demonstration had been *240 committed by the deceased. Five questions were propounded by the judge:
"By the Court:
All right. At the time the man made the movement you've spoken ofthe man that was killedhe and your brotherwere they having any words?
A. Yeshe was having words with my brotherYes sir.
Q. That's what I meanjust at this time?
A. Yes sir.
Q. Now, at that time did you (sic) brother have the gun in his hand that he had brought in?
A. Yes sir.
Q. And he was holding it when this happened?
A. Yes sir.
Q. Now, after the man made the move is that when your brother shot him?
A. Yes sir.
By the Court:
Thank you. You may go."
At this point defense counsel moved for a mistrial based upon the contention that the interrogation by the trial judge was improper.
The rule of law unanimously approved by this Court, and which has served to guide judges in the conduct of trials, is found in State v. Graffam, 202 La. 869, 13 So.2d 249 (1943).
"For the purpose of eliciting evidence which has not otherwise been brought out, it is proper for the judge to put questions to a witness either on his examination in chief or on his cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness. The judge may recall and examine a witness in order to supply an omission of proof on a material point. But he must conduct his examination in such a manner as to impress the jury with the idea that he is entirely impartial, and he must also conduct the examination in such a way as not to indicate his opinion on the merits or any doubt as to the credibility of the witness. He should not ask a question which is based upon the assumption of defendant's guilt of the offense charged."
There is no indication from the brief interrogation upon which this bill is founded that the trial judge in any way violated the quoted rule.
This bill has no merit.

Bills 26, 31, 32
Defense counsel filed an oral motion for a directed verdict. The motion did not specify the element of the crime not proved. This motion was overruled and bill 26 was reserved. The ruling was based upon the failure of counsel to set forth the elements of the crime concerning which the State failed to present evidence. On review this Court does not test the sufficiency of the evidence. Only where there is no evidence at all on some essential element of the crime charged will this court review the ruling of the trial judge. For in that instance a question of law is presented, it being a denial of due process to convict on no evidence at all to support an essential element of the crime. The sufficiency of the evidence to establish guilt or innocence is, however, a question for the jury. State v. Douglas, 278 So.2d 485 (La.1973). This bill has no merit.
Bill 31 was reserved when defense counsel filed a written motion for a new trial shortly after the verdict. The motion set forth that:
"The State had failed to prove beyond a reasonable doubt that the accused committed the criminal act in question. There is no evidence in the record to support *241 the decision that the accused committed the essential elements of the crime for which he was charged."
Since defense counsel did not appear to argue the motion on the day assigned for the hearing, and because on its face the motion set forth no specification of the basis relied upon, the trial judge denied the motion. The ruling was correct.
Unless there is no evidence to support an essential element of the crime, a new trial cannot be had. This showing must be made in the motion, pointing out the element of the crime concerning which no proof has been offered. This has not been done here and the ruling of the trial judge will not be disturbed.
Bill 32 was reserved to the denial of a motion in arrest of judgment. There is no argument in the brief to support this bill, and no evidence or argument was advanced in the trial court on behalf of the motion, it having been submitted on the face of the pleading. The motion presents issues which have been settled by decisions of this Court and have no merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs for reasons assigned by Mr. Justice TATE.
TATE, J., assigns concurring reasons.
DIXON, J., concurs.
TATE, Justice (concurring).
I concur in the affirmance of the conviction.
However, the majority's treatment of Bills Nos. 12, 18, 20, and 27 overlooks a legislative amendment. Although the result as to these bills is correct, the rationale is erroneous.
The defendant sought by his own testimony and that of his brother to prove that the victim had made a hostile demonstration against him. If so, the defendant was entitled to prove the victim's dangerous character and prior threats. The underlying reason is that, while one may not slay or injure a person of violent character upon meeting him, nevertheless it may be reasonable to act against him in self-defense if he makes some hostile act, at least in the context of the victim's dangerous character or of his prior threats. The majority holds that, upon the trial court finding the defense witnesses to be incredible, the state was entitled to keep from the jury testimony concerning the dangerous and bad character of the deceased victim. As will be seen, such a rule of law is usurpatory of the trial jury's function of determining facts and, moreover, is contrary to an express legislative amendment which is overlooked and not discussed by the majority.
La.R.S. 15:482 provides: "In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible." (As amended, Act 239 of 1952.)
To permit the trial court to deprive the jury of the evidence of prior difficulties between the parties, upon its own evaluation of the (un)truthfulness of the accused, is to confer upon the trial judge a power deliberately taken away from him by the legislature by the 1952 amendment of La.R.S. 15:482.
As originally enacted in 1928 and reenacted as La.R.S. 15:42 (1950), this provision stated that evidence of the dangerous character of the accused was not admissible in the absence of "proof" of hostile demonstration or overt act by him. Based upon this wording, the pre-amendment jurisprudence held that such "proof" must be to the satisfaction of the trial judge, subject to judicial review of the abuse of his discretion in such regard. State v. Terry, 221 La. 1109, 61 So.2d 888 (1952); State v. Sears, 220 La. 103, 55 So.2d 881 (1951); State v. Cox, 218 La. 277, 49 So.2d 12 (1950); State v. Tobias, 218 La. 226, 48 So.2d 905 (1950).
*242 Whether wisely or not, the 1950 amendment (which provides the present text) overruled this prior jurisprudence legislatively so as to permit evidence of the dangerous character of the accused to go to the jury if "evidence" (as contrasted with "proof") of hostile demonstration or overt act was introduced. See 14 La.L.Rev. 226-27 (1953); 13 La.L.Rev. 64 (1952). The legislature thus apparently accepted the late Chief Justice O'Neill's repeated dissent that the trial judge's deciding the issue of whether the evidence of the overt act is credible invades the jury's function and may deprive it of evidence relevant to its determination of innocence or guilt. See 11 La.L.Rev. 231-32 (1951). See also Note, 2 La.L.Rev. 376 (1940).
State v. Weathers, 304 So.2d 662 (La.1974) and State v. Foreman, 256 La. 999, 240 So.2d 736 (1970) were plainly in error in following the pre-1952 court decisions without repudiation of them.
The suggestion that evidence justifying the plea of self-defense may unilaterally be kept from the trial jury by the judge's determination is inconsistent, for instance, with our decision in State v. Montalbano, 257 La. 884, 244 So.2d 820 (1971). There, the trial court refused a special charge of self-defense upon its own determination that the defendant's evidence did not justify such a charge. We reversed, upon our finding that some evidence presented such a defense for the jury's consideration, whether or not the trial judge believed it or felt it to be sufficient.
However, I do not find error in the result of the majority denying reversible error: The "evidence" of the victim's overt actthat he allegedly made a motion with his handis not appreciable evidence of an overt act (especially when denied by other witnesses and in the absence of any showing that the hand-motion involved danger to the accused) such as is required to constitute a showing of an overt act to support the self-defense theory, for which evidence of the victim's dangerous character and threats is admissible. See 13 La.L.Rev. 64 (1952).
NOTES
[1] La.R.S. 15:482 provides:

"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."