338 So.2d 678 (1976)
STATE of Louisiana
v.
Charles Thomas MILLER.
No. 58036.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*679 Jerry A. Kirby, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
The question on this appeal is whether the trial judge erred in refusing to charge the jury on the law relating to the defense of justification as contained in Articles 18(6), 19 and 20 of the Criminal Code, particularly Articles 18(6) and 19. These articles provide:
"The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
"(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed. . . ." La.Crim.Code art. 18(6).
"The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against the property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide." La.Code Crim.Pro. art. 19.
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing." La.Code Crim.Pro. art. 20.
In refusing to charge the jury on these articles on justification the trial judge gave these reasons in his per curiam:
"There was no evidence or suggestion of fact which could possibly bring into application any part of Articles 18, 19 or 20 of the Criminal Code. It was not defendant's contention that he attempted to kill in self-defense or was resisting force. He admitted instigating the entire episode and, even though he had seen a man come out of the house with a gun, he admitted not knowing where the man was at the time he fired. His defense was not self-defense, but merely that he did not intend to shoot at anyone. His `justification' for firing his weapon was not a legal excuse for conduct otherwise criminal, but merely a denial of intent to harm. No facts in evidence related in any way to any circumstances provided for by the articles cited."
By Article 802 of the Code of Criminal Procedure the court "shall charge the jury" "as to the law applicable to the case." The general language of this article makes all questions of law applicable to a case mandatory charges to be given by the judge to the jury. This provision has been interpreted to require the trial judge to charge as to each and every phase of the case arguably supported by the evidence, whether believed by the judge or not. State v. Lentz, 306 So.2d 683 (La.1975); State v. Montablano, 257 La. 884, 244 So.2d 820 (1971); State v. Youngblood, 235 La. 1087, 106 So.2d 689 (1958).
A requested special charge shall be given by the court if it does not require qualification, *680 limitation or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.Code Crim.Pro. art. 807.
Whether the requested charge is wholly correct and pertinent requires an examination of the evidence and the contentions raised at the trial.
Defendant Charles Thomas Miller was charged by bill of information with attempted second degree murder of his wife Pamela Ann Miller. La.R.S. 14:27; La.R.S. 14:30.1. A twelve man jury returned a ten-to-two verdict finding the defendant guilty of the lesser, included offense of attempted manslaughter. Upon this verdict, Miller was sentenced to ten years at hard labor.
On the night of November 9, 1975 Pamela Ann Miller, the estranged wife of defendant Charles Thomas Miller, was visiting at the Kelly home on Prairie Road near the city of Monroe. She was sitting in a truck with Ronnie Kelly talking and listening to the radio. While she was so engaged defendant approached the truck and thrust a .12 gauge shotgun through the window. As he commanded "don't scream" she and Ronnie fell to the truck floor. Charles then pointed the gun at Pamela's back, opened the truck door and again tried to silence Pamela, who was screaming, and Ronnie, who was sounding the truck horn to summon help.
At that time Mrs. Kelly, Ronnie's mother, and Pamela's sister Sharon, the wife of Stephen Kelly, emerged from the nearby house and approached the truck. When they came within eight feet of the truck, defendant pointed the gun at Mrs. Kelly and told her not to come closer or he would "blow her brains out." Mrs. Kelly nevertheless sought to importune Charles to desist in his rash conduct, and he again threatened to kill her.
In the meantime Sharon ran to the house to get Stephen, her husband, and to telephone "the law". When Stephen emerged from the house with a .20 gauge shotgun, Charles shouted, "Stephen if you come out here, I will shoot your mother. I will kill your mother." Charles then compelled Ronnie, at gunpoint, to get out of the truck and made Pamela sit on the floor. Charles then got into the truck, all the while shouting to those present not to come near the truck, threatening to kill Pamela if they did.
While this was transpiring, Sharon had returned to the scene. As Charles tried to back the truck out, she jerked the door open on the passenger side and Ronnie grabbed Pamela and pulled her out of the truck, hollering "You all run", and they all did, crouching and retreating to a point near the house. As they reached the house a shot rang out and they "hit the ground", the shot shattering the brick on the house above them.
According to the testimony of Ronnie, except for his appearance as he came out of the house, Stephen was not seen by him thereafter until after the shot was fired. He did not know where Stephen was immediately prior to the shooting.
Stephen testified that when he came out of the house and Charles told him not to come closer or he would kill Stephen's mother he stopped right there. When Charles again turned his attention to those around the truck, Stephen walked around to the back of a car parked near the house and stood there. He was in that position as Pamela, Ronnie, Sharon and Mrs. Kelly passed within 25 feet of him in their retreat toward the house. They were about 30 feet from him when the shot was fired. Stephen saw Charles get out of the truck, start away from the fleeing group and, after walking 8 or 10 feet, he wheeled around and fired at them, striking the brick wall of the house above their heads. He then reloaded the gun and disappeared, running around the corner of a nearby building where his car was parked.
Charles Miller testified in his own behalf. His version of the facts was essentially that which is recited in the above narrative. He testified, however, that while he was starting the truck and when he put it in reverse *681 to back out he saw Stephen with a gun, which he thought was a rifle. Despite his threats, Mrs. Kelly had approached the truck from the driver's side and as she spoke to him, Ronnie and Sharon were pulling Pamela from the other side of the truck. He therefore stopped the truck, grabbed his shotgun and opened the door. As he started to run, he thought that he was directly in Stephen's view. He could not at that moment see where Pamela, Ronnie and Sharon were. They were running on the other side of the truck from which he had just emerged. When he heard Ronnie yell "run" he too started to run. After going approximately eight feet he realized he had to run under a nearby street light to reach his car, and that Stephen had a rifle and a clear view of the path he must take. So he turned and fired to make Stephen duck "so he wouldn't shoot me as I ran under this light." When asked what were his intentions when he shot, he said:
"To scare Stephen Kelly so he would have to duck so he wouldn't shoot me when I ran under the light because I knew that he had a straighthe was looking right at me as I was running with my back toward him and I knew that if I ran under the light he had a good minute maybe to shoot me or moreshoot me in the back as I was running."
It is the defense contention that the quoted articles on justification support his argument that he fired the shot at Stephen Kelly merely to protect himself and that he had no intention to kill or commit grave bodily harm. There was evidence to this effect, the argument goes, and the trial judge improperly denied instructions on the law of justification and self-defense.
Aside from the evidence referred to above, the defense theory of the case, counsel asserts, is plainly expressed in the opening statement. There defense counsel stated that the evidence would show that Stephen Kelly came out of the house with a .20 gauge shotgun which defendant believed to be a high powered rifle in the limited night light. All defendant wanted to do by shooting was to keep Stephen Kelly down behind the car where he was so that defendant could safely cross the open lighted area through which he must retreat in order to gain refuge in his automobile. Therefore, he shot high, as the evidence shows, not to kill his wife but to protect himself by creating a diversion which would prevent Stephen Kelly from using his gun against defendant.
From the evidence and by reference to the opening statement of the defendant it is apparent that justification was a phase of the case arguably supported by the evidence, whether believed by the judge or not in accordance with the established jurisprudence of this Court. State v. Lentz, 306 So.2d 683 (La.1975); State v. Montablano, 257 La. 884, 244 So.2d 820 (1971); State v. Youngblood, 235 La. 1087, 106 So.2d 689 (1958).
In view of defendant's conduct immediately preceding the shooting, his version of the shooting can be characterized as extremely doubtful. And this conclusion undoubtedly influenced the trial judge to deny the requested charge. However, the question is not what the judge believed the evidence proved, or even what view this Court has of the evidence. The question is, instead, what the jury would believe the evidence established if they had been instructed on the law of justification.
The requested instructions were not in writing as required by Article 807 of the Code of Criminal Procedure, and the entire charge of the trial judge is not in the record as required by the decisions of this Court holding that a complaint that the charge to the jury is deficient or improper cannot be considered by this Court unless the entire charge is made part of the record. State v. Jack, 285 So.2d 204 (La. 1973) and authorities there. The trial judge has, however, acknowledged that the charge was in fact requested and that he refused to so instruct the jury. In addition, the prosecutor makes no issue of the fact that the request was not in writing or that the entire charge of the trial judge is not contained in the record. He, too, meets the issue in brief without reference to these deficiencies.
*682 These circumstances, we believe, amount to a waiver of these technical requirements by the trial judge and the prosecutor and a recognition that the issue is squarely presented.
Finding this issue merits reversal of defendant's conviction and sentence, it is unnecessary to discuss the other assignments of error urged by the defense.
For the reasons assigned, the conviction and sentence are reversed and set aside, and defendant is granted a new trial.
SANDERS, C.J., dissents and assigns written reasons.
SANDERS, Chief Justice (dissenting).
Article 807 of the Louisiana Code of Criminal Procedure requires that a requested special charge be in writing. Moreover, on appeal, the denial of a special charge cannot be considered if the general charge is not made part of the record. See State v. Jack, La., 285 So.2d 204 (1973) and the authorities cited. Contrary to the majority, I find no waiver of these requirements on the part of the State either in the record or brief. Hence, for basic procedural reasons alone, the ruling of the trial judge should be affirmed.
On the merits I am not prepared to say that the trial judge erred in rejecting the charge as inapplicable. The defendant testified that he did not know the location of Kelly when he fired the shot, that he fired only to frighten him, and that he had no intention of shooting anybody.
For the reasons assigned, I respectfully dissent.